## W. H. DOWNARD ET AL. v. NATIONAL LOAN AND INVESTMENT COMPANY ET AL.

Decided February 10, 1900.

**Homestead—Builder's Lien.**

The owners of a homestead lot, desiring to have a residence erected thereon, arranged to obtain the necessary money from a loan company by making a building contract with its agent, giving him a note, secured by a contractor and builder's lien, which he indorsed to the company, and thereupon, at such owner's request, delivered the money to them in bulk to be by them applied to paying for the work and material, which was done, such agent noticing from time to time to see that the bills therefor were paid, but himself doing no part of the work. Held, that this was not a loan such as is inhibited by the Constitution (article 16, section 50) exempting the homestead from debts except for purchase money, taxes, and work and material used thereon, and the lien could be enforced.

APPEAL from Cooke. Tried below before Hon. D. E. BARRETT.

*Culp & Giddings,* for appellants.

*Blanton & Wright, Davis & Garnett,* and *Pruit & Smith,* for appellees.

CONNER, CHIEF JUSTICE.—This was an injunction suit to restrain the sale of appellants' homestead under trustee process in behalf of appellee. The trial resulted in a judgment for appellees dissolving the temporary writ of injunction theretofore issued, from which judgment this appeal has been prosecuted.

The evidence, interpreted conjointly with the judgment and the trial court's findings of fact, supports the following material facts:

On July 1, 1895, appellants, being husband and wife, were the own-

ers of a certain lot situated in the city of Gainesville, Texas, which constituted their homestead.   Said lot was unimproved, save that there was located thereon a small barn of the approximate value of $100.· Appellants being desirous of erecting a dwelling house on said lot for the purpose of occupying the same as their residence homestead, but being without means of doing so, applied to H. Hulen, one of appellee's agents, for a loan of $1500, and as a means of procuring said loan and securing defendant in the repayment of same, it was agreed between them and Hulen that they should enter into a written contract with Hulen for the erection by him of said house for the sum of $1500, with the understanding that they should execute to Hulen their note for the amount, to be secured by mechanic's and builder's lien on the premises, and that when the contract was duly executed the defendant National Loan and Investment Company should take up plaintiffs' note to Hulen and advance the money thereon to build said house; and accordingly plaintiffs did execute their note to Hulen and the contract for the erection of said house by Hulen was duly executed with all the formalities requisite to fixing a mechanic's and builder's lien thereon.   Thereafter Hulen indorsed said note and delivered same to defendant National Loan and Investment Company, and said company thereupon forwarded the sum of $1500 to their agent Hulen, who turned the same over to plaintiff W. H. Downard, upon the express agreement of said Downard that it should be expended in the erection of said house.

The contract between plaintiffs and Hulen was made in good faith by. all the parties, for the purpose of securing defendant National Loan and Investment Company for the money they proposed to borrow from it, and the money received by Hulen from said defendant and turned over to plaintiff W. H. Downard was all expended in the erection of said house. Hulen did not in person erect nor superintend the erection of said house, nor was it understood that he should do so.   It was his intention, however, to see that the house was erected, and he in fact kept watch over the same and knew what bills were being paid and those not paid.   He would have applied the money to the bills himself, but for Downard's promise that he would so apply the money and Hulen's confidence and trust in him.   The money was given Downard in bulk at his solicitation, he assigning as a reason therefor that if he had the money he could get labor cheaper, and would have better control over the workmen; and Hulen having confidence in him, and requiring bond for the application of the money in the building as before stated, gave the money in bulk to Downard, instead of paying the bills in person.

The house was in fact erected by day laborers, under the supervision of one L. O. Williams, who was employed by Mr. Downard at daily wages. The house had been partially erected before the actual receipt by Downard of the money, but the arrangement therefor, as before stated, was made before the employment of any labor or the purchase of any material, and Hulen informed a firm of lumber dealers, who applied to him

to know, that Mr. Downard would have his money, and that such firm could go ahead and furnish him lumber.

The form and sufficiency of the trust deed, and the fact that appellants are in default, and that sale is authorized under the terms of the trust deed, are not questioned, and we therefore need not set out the facts relating thereto.

We are of opinion that in such state of the case the writ of injunction was properly dissolved. We do not understand a contract and lien of the nature here shown inhibited by our Constitution. On the contrary, as has been held, the exception in section 50, article 16, of that instrument, confers upon the husband and wife power to incumber their homestead in the manner there indicated, "for work and material used in constructing improvements thereon." It is evident that this exception is for the benefit of the family. Its object is to provide a way for the husband and wife to procure a suitable home and residence roof to shelter them and their children, if any, upon their homestead lot, in cases where they would otherwise be unable to obtain the same. We think this provision of the Constitution should be construed in aid of the objects in view, and that a contract and lien, in whatsoever form it may appear, which excludes the idea of a mere loan, and is executed in accordance with the formalities required by the Constitution, with the real purpose and effect of thereby securing the necessary labor and material used in constructing improvements upon the homestead lot, should be upheld.

It was alleged and is here insisted that the contract in question was made to assume the form of a contractor's lien as a mere device to avoid the inhibitory effect of our constitution and laws upon a loan upon the homestead. But the trial court found against this view, and we think the evidence sufficient to sustain this finding. We do not think the mere fact that it was understood that Hulen would do no part of the work is conclusive against the lien. He, by virtue of his contract, was under legal obligation to see that the house was built. He testifies this was his intent, and that he in fact kept watch over its erection and knew what bills were being paid and what not. Nor do we think the fact that W. H. Downard received the money in bulk and employed the laborers and purchased the material, under the circumstances, conclusive. The findings of the court, sustained by the evidence, support the inference that this was permitted at the request and in the interest of Mr. Downard. The effect of the transaction was, as intended, that the appellee company furnished the labor and material to the extent of $1500, the wife having full notice of the purpose and extent of the lien.

The question, however, and the different phases thereof have been so fully discussed and decided that we forbear expressing our views at length, contenting ourselves with the citation of the following authorities: Lippincott v. York, 86 Texas, 276; Pioneer Loan Co. v. Edwards, 12 Texas Civ. App., 556; Walters v. Loan Assn., 29 S. W. Rep., 51; Lux-

emburg v. Loan Assn., 9 Texas Civ. App., 261; Pioneer Loan Assn. v. Paschal, 12 Texas Civ. App., 613; Bank v. Campbell, 46 S. W. Rep., 845; Pioneer Loan Assn. v. Everhart, 18 Texas Civ. App., 192.

We conclude that the judgment below should be affirmed, and it is so ordered.

*Affirmed.*

Writ of error refused.