## S. A. BAYLESS ET UX. v. STANDARD SAVINGS & LOAN ASSOCIATION.

### Decided May 6, 1905.

**1.—Homestead—Lien for Purchase Money and Improvements—Deed of Trust.**

A mortgage, trust deed or other lien on the homestead may be created to secure the purchase money therefor, and for improvements made thereon, and the contract or lien for improvements, in whatever form it may appear, is sufficient if it excludes the idea of a mere loan, and is executed with the formalities required by the Constitution, with the real purpose and effect of thereby securing the necessary labor and material for the improvements. Const. art. 16, sec. 50.

**2.—Same—Money Advanced by Loan Company.**

B. contracted to purchase from M., for $300, a lot upon which he desired to erect a house for his homestead, and to secure the money for both purposes he negotiated a loan of $1,500 from a loan company; it being agreed by all that B. should execute a mechanic's lien note for $1,500 to M. Such note was executed by B. and his wife with the formalities requisite for conveyance of a homestead, it reciting that it was given for the erection of a house on the lot. M. contracted to furnish material and construct the building, but did not do so, as it was not intended that he should, but that B. should build it, which he did. M. executed a deed, but deposited it in escrow, and assigned the note to the loan company. After B. had done some work on the house he and his wife executed in due form a note to the company in renewal of the note given to M., and secured it by deed of trust in the usual form. B. then received the money and the deed, paying M. for the lot. Held, that the trust deed was a valid lien, and a sale thereunder passed the title as against the homestead claim.

Appeal from the District Court of Jack. Tried below before Hon. J. W. Patterson.

Vol. XXXIX. Civil—23.

*Thos. D. Sporer,* for appellants.

*Nicholson & Fitzgerald,* for appellees.

CONNER, CHIEF JUSTICE.—Appellants, S. A. Bayless and wife, appeal from an adverse judgment in a suit instituted by them to recover possession of a certain lot described in their petition, situated in Jacksboro, Texas, and to cancel the trustees' sale by virtue of which the appellee association claimed the same. It is alleged that, at the time of the execution of the note, mechanic's lien and trust deed, under which appellee claims, the said lot was the homestead of appellants, and it is upon this ground that the recovery and cancellation stated is sought. The trial was had before the court without a jury, and the assignments raise substantially but one question: Does the evidence support the judgment rendered?

So far as necessary to be stated, we find the acts to be substantially as follows: Appellants, being without a homestead, and desirous of securing one, and being without the means to purchase a lot and secure the material with which to erect a dwelling thereon, contracted with one B. R. McConnell, then the owner of the lot involved in this controversy, to purchase the same, and applied to one Taylor, local agent of the appellee company, for a loan for the purpose of attaining the object stated. Taylor declined to make the loan desired until after appellants had secured a deed for the lot, and McConnell, it seems, declined to execute deed until the purchase price, to wit, $300, was paid. At Taylor's suggestion, therefore, on July 14, 1899, appellants executed and delivered to said McConnell what is termed in the evidence a mechanic's lien note, for the sum of $1,500, payable to B. R. McConnell or order on or before August 30, 1899. The note is thus further described in the evidence: "It is given in payment for the erection of a house on a certain lot (describing the lot in controversy), and that to secure the prompt payment an express contractor's, mechanic's, materialmen's and laborers' lien is granted on the above described property." McConnell executed contract to furnish the material and construct a building on said lot. The mechanic's lien note was executed by S. A. Bayless, the husband, and by his wife, R. S. Bayless, with all of the formalities required by the Constitution and laws for the conveyance of a homestead. Between the date of this note, July 14, 1899, and August 1, 1899, appellant S. A. Bayless began the erection of the contemplated dwelling with some building material he already had, and had the frame partly completed, but it seems that there were some objections urged to the loan, to avoid which, or for some other reason, appellants likewise in due form, on said August 1, 1899, executed a renewal note for the sum of $1,500, payable to the appellee company on or before twelve months after its date, and reciting that it was given in renewal and extension of the mechanic's lien note for $1,500, dated July 14, 1899. To secure the note of August 1, 1899, appellants executed a trust deed in the usual form.

Appellants do not question the form or urge any defect in the execution of any of the instruments mentioned, the sole contention being that, at the time they were executed, the lot in controversy constituted

their homestead. It further appears that McConnell assigned to the appellee company the mechanic's lien note, and made deed to the lot in controversy to appellants, but deposited said deed in escrow until such time as appellants could secure the money from the appellee company and pay for the lot. In due course of time the appellee company forwarded check payable to appellant S. A. Bayless for the amount of the loan, out of which he paid to McConnell the price of the lot as agreed upon; McConnell thereupon delivered deed theretofore held in escrow, as stated, and appellants used the remainder of the money in the purchase of the material with which the house upon the premises in controversy was erected. Subsequently, and before the institution of this suit, the lot in controversy was sold to the appellee company in accord with the terms of the trust deed mentioned, and it is upon this title appellee relied below.

McConnell, at the time of executing his contract to erect the house mentioned, had no purpose of doing so in person, or of himself furnishing the money with which it could be done. He thus states it in his testimony: "As I understood it, the contract was executed to enable Mr. Bayless to buy a lot and build a house. They were to get the money from the loan company. I never intended to build the house and never advanced any money. Mr. Bayless himself was to do the work. He and his son did do the work. . . . I sold Mr. Bayless this lot, you understand; Mr. Taylor explained what they wanted to do. Mr. Bayless wanted to get a loan, and he had to have a deed to the lot before the loan company would furnish the money, and they wanted me to execute the deed, and I executed the deed to be held in escrow until the money come." The good faith of the transactions mentioned seems to be undisputed. The appellant S. A. Bayless thus testifies on the subject: "I did not enter into the contract with Rush McConnell in order to defraud the loan company. The purpose of entering into the contract was to get money from the loan company to build the house. . . . I did not sign the renewal note or mechanic's lien, or make the application to the loan company in order to perpetrate a fraud on them; I never thought of such a thing. I was acting in good faith." Mrs. R. S. Bayless testified: "No, sir; at the time we signed and acknowledged these different papers we did not sign them for the purpose of swindling the loan company. We were acting in good faith. I never did intend to do them any wrong. We expected to pay them the money. We have always tried to do what was right." We are of opinion that the trial court properly interpreted these facts, and that his judgment thereon is fully supported by them.

We do not question the familiar rule that an intent, coupled with acts of preparation to make a homestead, in fact, by residence, constitutes a sufficient dedication of a homestead in advance of actual occupancy. The constitutional exemption invoked by appellants, however, is, so far as necessary here to quote, in the following language: "Article 16, section 50. The homestead of a family shall be, and is hereby protected from forced sale, for the payment of all debts except for the purchase money thereof, or a part of such purchase money, the taxes due thereon, or for work and material used in constructing improvements thereon, and in this last case only when the work and material are con-

tracted for in writing, with the consent of the wife given in the same manner as is required in making a sale and conveyance of the homestead. . . . No mortgage, trust deed or other lien on the homestead shall ever be valid, except for the purchase money therefor, or improvements made thereon, as hereinbefore provided, whether such mortgage or trust deed or other lien shall have been created by the husband alone or together with his wife." It is thus made manifest that the homestead may be sold by virtue of an appropriate trust deed for the payment of the purchase money, or a part of the purchase money, for the homestead, as, indeed, has been more than once decided.

It is also manifest, from the provision of the Constitution quoted, that a mortgage, trust deed or other lien on the homestead may be created to secure the purchase money therefor, and for improvements made thereon. In speaking of this, in the case of Lippencott v. York (86 Texas, 281), Judge Stayton used the following language: "The power of a husband and wife, in the manner prescribed by the Constitution, to give lien on homestead, by express contract, to secure payment of indebtedness incurred for work or material used in constructing improvements on the homestead, is made clear by the Constitution, which speaks of mortgages and trust deeds which can exist only through contract." The Supreme Court therein further says: "The Constitution further provides that mechanics, artisans and materialmen of every class shall have a lien upon the buildings and articles made or repaired by them for the value of their labor done thereon, or material furnished therefor; and the Legislature shall provide by law for the speedy and efficient enforcement of said liens. (Const., art. 16, sec. 37.) This section as clearly evidences the solicitude of the people to give protection to the classes named in it as does the former to protect the homestead from forced sale, and from liens upon it for any purposes other than those enumerated. . . . Considerations which induce and justify legislation giving lien to secure value of labor and material expended in improvements on real property are the same, so far as the improvements are concerned, as without such legislation secures to the vendor a lien on land sold to secure the unpaid purchase money; and the Constitution, on same considerations, as between the parties to contract under which improvements are made, places these two classes of creditors on the same footing as to right to lien on the land itself, and it recognizes the power and right of the owners in the one instance as in the other to fix the lien by contract."

We see nothing, therefore, in the provision of the Constitution invoked that prevented appellant S. A. Bayless, for the purpose of acquiring a home, from entering into the contract that he did. The record shows that he was otherwise unable to secure a homestead at all. The substance,—the legal effect,—of the mechanic's lien and note executed by himself and wife in the manner prescribed in the Constitution on July 14, 1899, was a contract and lien to secure the money with which to acquire the property involved, and to construct thereon a habitation for his family. At this time no homestead can be said to have existed by any process of reasoning. The title to the land in controversy had not then passed from its owner McConnell. It was not intended that it should then do so. McConnell executed an

instrument which by its terms bound him to construct the building, and it seems to us as immaterial that he testified that he had no such purpose. The note and instrument termed the mechanic's lien was sufficient to, and in fact did, secure the purchase money. It was duly assigned to the appellee company, and the subsequent note and trust deed of August 1, 1899, was in substance but a continuation, in a somewhat different form, of the obligations originally created. In the case of Gillum v. Collier & Richardson, 53 Texas, 592, our Supreme Court decided that (quoting from the first head-note) : "Where land claimed as a homestead is charged with equities and incumbrances antedating the purchase, the husband, acting in good faith, has the right to adjust such equities and incumbrances by substituting for them a new lien on the land." At a time, therefore, notwithstanding the preparatory acts in building hereinbefore mentioned, when no homestead right whatever in the land in controversy existed—when the title yet remained in the owner McConnell, both appellants, as we have seen, acting in good faith, created in the manner prescribed in the laws and the Constitution the lien and executed the trust deed under which appellee claims, it was their then purpose to faithfully comply with their obligations and to pay the money with which the home was in fact acquired, and we think the court below properly gave effect to such purpose.

We think this case similar to the case of Downard v. National Loan & Investment Company, 22 Texas Civ. App., 570, 55 S. W. Rep., 981, by this court, and in which a writ of error was refused by the Supreme Court. In that case Downard and wife, for the purpose of securing loan with which to improve their homestead, applied to an agent of the loan company for a loan of $1,500. The agent entered into a contract for the erection of a dwelling upon the homestead with the understanding that Downard and wife should execute their note for the amount desired, to be secured by a mechanic's and builder's lien on the premises. The note and lien was duly executed and then transferred by the agent to the loan company, which thereupon forwarded the amount of the loan ($1,500) to the agent who in turn delivered the money in bulk to the husband Downard. The house was constructed by laborers employed by Downard, and Downard with the money secured from the company paid the laborers and materialmen, the agent not having taken part in the building. We there held that the fact that Downard, the owner, received the money in bulk and employed the laborers and purchased the material, and that the agent did no part of the work in constructing the building, was not conclusive against the lien, and "that a contract or lien, in whatsoever form it may appear, which excludes the idea of a mere loan, and is executed in accordance with the formalities required by the Constitution, with the real purpose and effect of thereby securing the necessary labor and material used in constructing improvements upon the homestead lot, should be upheld." And the lien in that case was upheld. See, also, the cases of Luzenburg v. Bexar Building & Loan Assn., 9 Texas Civ. App., 261, 29 S. W. Rep., 237; Pioneer Saving & Loan Co. v. Paschal, 12 Texas Civ. App., 566, 34 S. W. Rep., 1002; Pioneer Saving & Loan Co. v. Everheart, 18 Texas Civ. App., 192, 44 S. W. Rep., 885; National

Bank of Muskogee.v. Campbell, 46 S. W. Rep., 845, and authorities therein cited. We think the case now before us more strongly in favor of the lien than the Downard case: that the facts herein evidence a transaction other than a mere loan upon the homestead, and that the judgment should be affirmed.

*Affirmed.*

Writ of error refused.