MELCHER et al. v. HIGBEE et al.

(Court of Civil Appeals of Texas. Galveston. March 16, 1914. Rehearing Denied April 9, 1914.)

1. MECHANICS' LIENS (§ 14*)—HOMESTEAD—CONTRACT—VALIDITY.

Where defendants, desiring to obtain a building loan to construct certain improvements on their homestead, executed a note to the contractor for the amount to be loaned, together with a contract reserving a mechanic's lien, which note and contract were transferred to plaintiff's testator, who advanced the money, and, prior to the execution of the note and contract, defendants represented to testator's attorney that all the labor and materials theretofore provided had been paid for, the lien reserved in the contract was valid as to all work and materials furnished for the improvements on the homestead subsequent to the execution of the contract.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. § 16; Dec. Dig. § 14.*]

2. ESTOPPEL (§ 22*)—RECITALS—CONTRACT.

Where a mechanic's lien on a homestead, executed to secure a building loan, recited that it was agreed that all work already done on the building and all material furnished had been paid for, the borrower was estopped to thereafter deny the truth of such statement in order to avoid the lien.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. §§ 27–51; Dec. Dig. § 22.*]

3. MECHANICS' LIENS (§ 277*)—DESCRIPTION OF PROPERTY—VARIANCE.

Where a mechanic's lien note described the land as "lot 14, block 41," while the petition for foreclosure described it as the "west half of lot 14, block 41," but the contract described it as in the petition, and the note and contract were made a part of the petition, the variance was not fatal.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 546–554; Dec. Dig. § 277.*]

Appeal from District Court, Wharton County; Samuel J. Styles, Judge.

Action by Margaret F. Higbee, as executrix of H. D. Brown, Sr., deceased, and others, against Louis Melcher and others. Judgment for plaintiffs, and defendants appeal. Affirmed.

Gaines & Corbett, of Bay City, for appellants. G. G. Kelley and W. L. Hall, both of Wharton, for appellees.

McMEANS, J. Mrs. Margaret F. Higbee, as executrix of the estate of her deceased father, H. D. Brown, Sr., brought this suit against defendants Louis Melcher and wife to recover upon a negotiable promissory note executed and delivered by defendants to H. Beneker on November 17, 1906, being for $1,200 balance due on said note, and interest, and 10 per cent. attorney's fees, as provided in the note, which note was indorsed to said H. D. Brown on January 29, 1907; and also for foreclosure of a mechanic's and furnisher's lien on the west half of lot No. 14 in Block No. 41 in the town of South El Campo, created by virtue of a contract executed by and between Louis Melcher and wife on the one part, and Henry Beneker on the other

part, also dated November 17, 1906. The note and lien contract was set out in full in plaintiffs' petition.

The defendants answered by general denial, and specially pleaded that they were husband and wife at the time of the execution and delivery of the note and contract, and that they, at said time, were living on the lot on which the lien was sought to be foreclosed, and that same constituted their homestead; that the contract for material described in the exhibit attached to the alleged materialman's lien, set up by plaintiff, was made prior to the execution of said note, and without the consent or "connivance" of the defendant I. A. Melcher, the wife; that all of the material that went into said house was contracted for and work begun upon said premises prior to November 17, 1906, and long prior to the execution of the lien declared upon in plaintiffs' petition.

To this answer plaintiff filed her supplemental petition, denying that the material for the erection of the house on which her lien was claimed was bought prior to the execution of the contract entered into between the defendants and the contractor, Henry Beneker; that, while the erection of said house had been begun prior to said time, it was distinctly understood and agreed by and between H. D. Brown, Sr., who purchased the Melcher note from said Beneker, and defendants that he (the said Brown) would not have anything to do with carrying the note of said Melcher, unless all the material purchased before the entering into said contract was paid for, and a new bill of lumber, based on the contract entered into by and between said Beneker and defendant, was made; that the said Beneker also understood this; that such an arrangement was made between said contractor and the said Melcher, whereby the said bill of lumber theretofore purchased was fully paid for by said Melcher, and an entirely new bill made out for the future erection of said house; that these facts were all, so represented to the said Brown, and that it was upon such representation to him that said Brown bought said note; that, if the fact of this settlement of the old bill and the making of the new was not actually made, but only pretended, then same was a fraud on said Brown, and he was not aware of such secret defects and fraud in said transaction, and cannot be bound by it. Plaintiff further alleged that the defendant Melcher had entered into a deliberate scheme to defraud the said Brown by attempting to evade the arrangement regarding the settlement of the prior bill of lumber; that, by reason of all these facts, defendants were estopped from urging the defense set up by them.

In reply to this petition, the defendants filed a supplemental answer, in which they deny that any new contract was ever made or entered into by and between the plaintiff and the contractor, Henry Beneker, for the construction of improvements on defendants' property, or that any change or amendment of any kind was ever entered into in connection therewith; that some time during the month of October, 1906, the defendant Melcher, being desirous of erecting improvements on the south half of lot 14 in block 41 in El Campo, entered into an agreement with the said Beneker for the erection of said improvements, and to do all the labor necessary therefor, and entered into a contract for the purchase of the material from Mack Webb; that, prior to the making of this agreement and contract, Louis Melcher had borrowed from Horace D. Brown, $1,500 with which to pay said material bills and labor for the erection of the house; that, at the time said money was so borrowed, no lien was contemplated as between the parties, nor was any given; that on or about the 15th of November, 1906, the greater part of the material having been purchased and the building partly erected, Mack Webb called upon the defendant Melcher for a payment for the labor and material as sold; that thereupon H. D. Brown, the deceased, was called upon to advance the money, as per the agreement with Melcher; that, when Melcher went to the bank with Brown to get the money, the question regarding the securing of this loan was raised, at the suggestion of F. J. Hardey, and a mechanic's lien suggested, and said Melcher agreed to this, and thereupon the papers were prepared; that the defendants had never paid one cent on the note sued on, but that the indorsement of $300 on said note was made by plaintiffs, or some one acting for them, at the time payment was made to Mack Webb for material furnished that went into said building, said payment being made directly to Mack Webb, and the defendants allege, on information and belief, that the amount so paid to Mack Webb was $1,200, but, as no money ever came into their hands or was ever paid to them or either of them on account of the execution of said note, they could not state definitely as to that. They also deny ever having made any representation to said Brown, or that they attempted to defraud him. The defendant Melcher also admitted in said answer that there was some sum of money advanced by Brown to liquidate the indebtedness due to Mack Webb for material furnished, but, as to such amount, he could only say from what had been told him, and for this he admits that he is personally liable therefor.

The case was tried before a jury, and, when the parties had closed the evidence, the court instructed the jury to return a verdict in favor of plaintiff, and, this being done, a judgment was entered in her favor for the amount of the principal and interest of the note sued on, and for 10 per cent. attorney's fees, as provided in the note and foreclosure of the lien upon the lot of land. From this judgment defendant has appealed.

The material evidence is undisputed and is substantially as follows:

Some time in October, 1906, Louis Melcher entered into a contract with Henry Beneker to build him a house on the land in controversy, on a portion of which he and his wife were then living, and which was their homestead. A part of the lumber and material for the building of the house had been bought, and a part of the work thereon had been done, prior to November 17, 1906. A day or two prior to November 17, 1906, Melcher applied to H. D. Brown, Sr., for a loan to enable him to carry on these building operations. He was referred to W. L. Hall and G. G. Kelley, attorneys, at Wharton, Tex., for the necessary steps to be taken in order to get this money. He was advised by Kelley that, in order to fix a lien on this property in order to secure the money sought, all material bought and labor done prior to that time would have to be paid. Kelley testified that Melcher told him in that conversation that the work and material furnished up to that date was about $500, and that he (Melcher) had the money to pay this, and he told Melcher if he would pay this off they would make the loan. Melcher did not dispute this. Thereupon Kelley prepared the note and mechanics' lien contract, which was introduced in evidence, and sent it over to El Campo by Melcher. Kelley then gave instructions to Mr. Brown and Mr. Hardey, his agent, as to what he had done and what they were to do. and also gave these instructions to Melcher. This note and contract were duly executed by Melcher and wife and Beneker on November 17, 1906, and duly recorded. as the law requires.

This contract contains this recital: "It is understood and agreed by and between the parties hereto, that the work already done upon said building and material already furnished has already been paid, amounting to the sum of $500.00. And the party of the second part hereby acknowledges receipt in full thereof. It is further understood and agreed that none of said work done and material furnished is embraced in this contract, but that all of said material and work embraced in this contract is yet to be furnished and done, and that this is a new and separate contract from that heretofore entered into between said parties for the construction of said building."

The evidence is undisputed that on January 29, 1907, this note executed by Melcher and wife to Henry Beneker was indorsed to H. D. Brown, Sr., and that on January 30, 1907, Brown gave Beneker his check for $1,200, and this check was indorsed by Beneker to Mack Webb on February 1, 1907, and Mack Webb got the money on it from the bank on February 2, 1907. The indorsement of the credit of $300 on the note is explained by Beneker as being for extras.

It was undisputed that all of the labor done on the house prior to November 17, 1906, when the note and contract were executed, was paid for on or before that date. All of the above evidence is undisputed.

The defendants, however, dispute, by the evidence of Louis Melcher and Mack Webb, that all of the material that went into this building prior to November 17, 1906, when the contract and note were executed, was paid for on or before that date, but the record does not disclose any evidence as to how much lumber and material was furnished before that date, or how much was paid for.

Melcher testified: "I do not know what was the amount due for material in that house at the time this contract was entered into, on November 17, 1906, but the biggest part of that building was done at that time."

Mack Webb testified: "I could not say positively how much lumber I delivered to Mr. Beneker or Mr. Melcher prior to the 17th day of November, 1906, nor just how much I delivered subsequent to that time."

Webb, when afterwards on the stand, testified: "I cannot say whether there was ever a cent paid me at all in connection with the Melcher deal until this payment on the 1st of February, 1907, the date of the check, but we might be able to throw some light on it by looking at the bill that was rendered; maybe that will show some payments or something. Here is a memorandum of $100 paid on the 16th of October, at the time this bill was made. It is in my handwriting on the bill, and was paid at the time the bill was made. There are no other credits on the bill except the $100 when the bill was made, and a little rebate for stuff not taken. So far as my record shows, except for the $100 that was paid at the time the bill was made in the beginning, the 16th of October, the money indicated by this receipt and check is every cent that was paid me on the material. How do I know whether any was paid that I did not make any record of, when my books are gone and I can't find them? I generally credit up everything I get, of course."

Melcher testified that the entire cost of the material and labor for the building of the house was about $2,000. The specifications attached to the contract state the total cost of the building to be $2,000.

Kelley testified that when Melcher came to him to see about getting the money from Brown, that he told him that he had the money to pay for all the work and material that had been done upon the building at that time, which he said was about $500. Melcher did not deny that he made this statement, but said he did not remember it.

The note and contract were for $1,500. There was no evidence that Brown, who bought this note, ever knew that any portion of the material for which, and the work done, this note was given was furnished before the execution of said note and lien contract. The contract itself expressly states that all work done and material furnished prior to that date had been paid for.

[1, 2] Under the foregoing facts, we are of the opinion, and hold: (1) That the contract between Melcher and wife and Beneker created a valid lien on the lot, and was not a subterfuge for a loan from H. D. Brown (Lippencott v. York, 86 Tex. 276, 24 S. W. 275; Building & Loan Association v. Goforth, 94 Tex. 260, 59 S. W. 871; Churchill v. Bielstein, 9 Tex. Civ. App. 445, 29 S. W. 392; Walters v. Loan Association, 8 Tex. Civ. App. 501, 29 S. W. 51; Downard v. Loan Co., 22 Tex. Civ. App. 570, 55 S. W. 981); (2) that the lien was valid as to all work done and material furnished after the execution of said contract and creation of said lien (Walker v. House [Civ. App.] 24 S. W. 82; Heady v. Bexar B. & L. Ass'n [Civ. App.] 26 S. W. 468); and (3) that, inasmuch as the contract signed and acknowledged by Melcher and wife expressly recited that it was agreed between the parties thereto that the work already done upon said building and the material already furnished, amounting to $500, had been paid for, and that none of the same was embraced in the contract for labor and material to be done and furnished under the contract, and that said contract was a new and separate contract from that theretofore entered into between the parties for the construction of the building, and having procured H. D. Brown to advance the money on the faith of the truth of such recitals, appellants are estopped to deny the same are true, even though a portion of the amount advanced by him may have been used to pay for material and labor furnished and performed before the contract was executed. Roane v. Murphy (Civ. App.) 96 S. W. 782; Cain v. Bonner (Civ. App.) 149 S. W. 702.

We are of the opinion, therefore, that the court did not err in instructing the jury to return a verdict for appellee, and the assignments of error raising the point are overruled.

[3] There is no merit in the assignment which complains that the court erred in admitting in evidence, over appellants' objection, the note sued on, because of variance in the description as given therein and in the petition, of the lot sought to be foreclosed upon. The lot was described in the note as lot 14, block 41, while in the petition it is described as the west half of lot 14, block 41. The contract describes it as the west half of lot 14, block 41, and the note and contract were made a part of the petition. The variance was not such as could have operated to the prejudice of appellants. Nor was it error to admit the lien contract in evidence, over the objection of appellants of variance between the description of the lot as contained in the note and in the contract, for the same reason. The second and third assignments raising the points are overruled.

We will not extend this opinion by a discussion in detail of appellants' other assignments of error. It is sufficient to say that we have carefully considered all of them, and find no reversible error in any of them.

The judgment of the court below is therefore affirmed.

Affirmed.