**MILLER et al. v. STANDARD SAVINGS & LOAN ASS'N OF DETROIT, MICH.**

No. 13251.

Court of Civil Appeals of Texas. Fort Worth.

Oct. 25, 1935.

Rehearing Denied Nov. 29, 1935.

E. J. Miller and L. D. Hillyer, both of Brownwood, and Critz & Woodward, of Coleman, for appellants. .

Leroy A. Smith, Van Zandt Smith, and R. B. Young, Jr., all of Fort Worth, for appellee.

BROWN, Justice.

On March 15, 1930, H. L. Camp and wife, being the owners of lot 16 in block 3 of Brownwood Heights addition to the city of Brownwood, in Brown county, Tex., entered into a written contract with one G. M. Stuteville, designated as contractor, whereby Camp and wife promised to pay such contractor, within 60 days, the sum of $1,200, with interest, the contract reading, in part, as follows:

"This obligation is given for labor and building material agreed upon and is to be furnished us to be used in the erection or repair of improvements upon the following tract of land owned by us in fee simple, free of any encumbrance whatsoever, situated in Brown County, State of Texas, and described as follows, towit:

"All of Lot No. Sixteen (16) in Block No. Three (3) of the Brownwood Heights addition to Brownwood, Brown County, Texas.

"We hereby agree and contract that the payment of this obligation shall be, and is hereby, secured by a Mechanic's Laborer's and Builder's lien upon said land and said improvements now on or to be placed thereon."

The contract is duly signed and properly acknowledged by Camp and wife.

On March 15, 1930, H. L. Camp made written application to Standard Savings & Loan Association, for a loan of $1,200 to take up and extend the mechanic's and materialman's debt and lien above described, in which application he stated that the improvements on the described land had been "repaired, remodeled, painted, papered, part new roof, underpinning," in 1930; that the mechanic's lien was given to G. M. Stuteville by H. L. Camp and wife on March 15, 1930, for the sum of $1,200, payable in 60 days; that the land was worth

$600 and the improvements $2,500; that the money being borrowed was to be used in repairing the property as follows: "Put on part new roof, paint with three coats good paint, paper completely, go under house straighten up all underpinning, take out all old lumber on porches and other parts of house and other repairs needed."

The loan was approved and Camp and wife executed a renewal note on March 27, 1930, for $1,200, payable in 82 months, by monthly payments. The note expressly stipulates that it is given in renewal and extension of the Stuteville obligation, secured by the mechanic's lien, and expressly recognizes and retains the said lien to secure the renewal note. Concurrently with the execution of the note, Camp and wife executed a deed of trust on the said premises, to secure such note, and in the deed of trust set out that the renewal note was given in lieu of the Stuteville obligation, describing it in detail, and the fact that the obligation is secured by a mechanic's lien on the said premises, of record; that such debt and lien had been transferred and assigned by instrument, of record, by Stuteville, and these prior instruments are not only referred to, but they are made a part of the contract with the association and the original lien is expressly retained to secure the renewal note.

On June 18, 1931, Camp and wife conveyed to E. J. Miller, by warranty deed, a 65-foot strip from said lot 16, fronting on Belle Plain avenue. The consideration is recited to be $300.

On December 5, 1931, Camp and wife, by warranty deed, conveyed to E. J. Miller all of lots 15 and 16 in said block 3; the consideration recited being $600 paid. This deed contains the following language: "As a part consideration the said E. J. Miller takes said property subject to a first lien in favor Standard Savings & Loan Association in the sum of about $1050.00." In the paragraph containing the warranty, the deed recites: "Subject, however, to said encumbrance in favor of Standard Savings & Loan Association, above mentioned."

Camp testified, in discussing the use to which the loan would be put, he told the loan association's agent: "I told him I wanted to give it a real general repairing up, all the way from plumbing, fixing the roof, jacking up the house and fixing the underpinning of the front porch, and paint and paper it." He admitted that he procured the loan in good faith, and executed the lien believing it to be "an honest lien."

He admitted that the cost of the repairs amounted to $1,543.55, and deducting the items which may be considered as not strictly covered by the proposed lien, there was left the sum of $1,120.55, which actually went into the improvements.

Mrs. Camp did not testify, but Camp's testimony discloses that she was well acquainted with the object for which the loan was made, and that the transaction was agreeable to her.

It is undisputed that after the Camps sold to Miller, they moved from the premises, being in arrears on the debt; that a portion of the improvements on lot 16 were moved so that they partly rest on lot 15; that the $300 paid by Miller as consideration for the first deed went on the debt; that after the deals with Miller, all payments on the debt were made by Miller; that Miller placed certain improvements on the premises.

Suit having been brought by the loan association for debt against the Camps and for foreclosure of its lien as against them and Miller, Camp and Miller answered.

Miller attacks the lien as being wholly invalid and not in compliance with the provisions of the State Constitution governing the fixing of liens on a homestead. His other contentions will not be noticed because of the view we take of the case.

Camp admitted in his pleading having received about $1,016 from the association, asserting that he does not know the exact amount; he attacks the lien contract as being simulated and fraudulent and known to the association's agent to be such; that the purported contractor, Stuteville, never did the contemplated work and make the repairs mentioned in the mechanic's lien contract. His other contentions will not be noticed by us, for the reasons given.

Among other contentions made by the association, in answer to the pleadings of Miller and Camp, is that of estoppel on the part of Camp and Miller to deny the association's right to foreclose the asserted lien.

The case was tried to the court, and judgment rendered, under proper pleadings, for the association against Camp in the sum of $1,103.59, principal and interest, and $110 attorney's fees, with foreclosure of the asserted lien on said lot 16 as against the Camps and Miller, in so far as the judgment for $1,103.59 is concerned; the foreclosure being extended to cover all of the improve-

524

ments moved from lot 16 partly upon lot 15, and with right and authority upon the part of the purchaser to move such improvements from lot 15. The stock issued by the association to Camp was canceled and its value credited by the court in arriving at the amount due by Camp.

Miller and Camp have appealed.

While there are many assignments of error incorporated in appellants' brief, we are of the opinion that it is necessary to discuss only those that go to the vitals of the case. These are: Is the mechanic's lien contract a nullity? Are Camp and Miller estopped to deny its validity?

One of the outstanding opinions in this state is that of the late Chief Justice Conner in Downard et ux. v. National Loan & Investment Company, 22 Tex.Civ.App. 570, 55 S.W. 981, writ of error denied.

In the Downard Case the husband and wife applied directly to an agent of the loan company for a loan necessary to make the contemplated improvements, and actually entered into a mechanic's lien contract with such agent as the contractor, the debt and lien were transferred to the loan company, and a deed of trust executed by Downard and wife, as in the case at bar, extending the debt and lien, and the money paid to Downard in a lump sum. It was understood between the parties that the loan company's agent, the purported contractor, would not actually erect the improvements. The lien was held to be good.

The case of Bayless et ux. v. Standard Savings & Loan Ass'n, 39 Tex.Civ.App. 353, 87 S.W. 872, is likewise much like the case at bar; as is Grammar v. Hesperian Bldg. & Savings Ass'n (Tex.Civ.App.) 70 S.W.(2d) 220, writ refused. See, also, Turbeville v. Book (Tex.Civ.App.) 226 S.W. 814, and Blackmon v. Texas Securities Co. (Tex.Civ.App.) 196 S.W. 590. In Barber et al. v. Herring (Tex.Com.App.) 229 S.W. 472, the decision in the Downard Case is quoted from with express approval.

The contract under review here cannot be held void and unenforceable because the named or purported contractor did not do all the work, or even supervise it, or handle the moneys. Is the contract a nullity because it does not describe, in detail, the work to be done and the improvements, or repairs, to be made? We think not, and are of the opinion that all parties knew what was to be done.

The following cases supported our views: Harrop v. National Loan & Investment Co. (Tex.Civ.App.) 204 S.W. 878, writ refused; Lipscomb v. Adamson Lbr. Co. (Tex.Civ. App.) 217 S.W. 228; Griffin v. Shamburger (Tex.Civ.App.) 262 S.W. 144; Bosley v. Pease (Tex.Civ.App.) 22 S.W. 516; affirmed by the Supreme Court 86 Tex. 292, 24 S.W. 279; see, also, Standard Savings & Loan Ass'n v. Davis (Tex.Civ.App.) 85 S. W.(2d) 333, writ refused.

Finally, are the Camps and Miller estopped to deny the right of foreclosure of the purported lien? We think the facts presented and the findings made by the trial court, as disclosed by the judgment, compel an affirmative answer. Such authorities as Farm & Home Savings & Loan Ass'n v. Muhl (Tex.Civ.App.) 37 S.W.(2d) 316, writ refused; Quillin v. State Trust Co. (Tex. Civ.App.) 50 S.W.(2d) 879, writ refused; and First Texas Joint Stock Land Bank v. Chapman (Tex.Civ.App.) 48 S.W.(2d) 651, support our views.

Furthermore, it is clear from the record and the undisputed facts that Miller cannot be heard to deny the validity of the purported lien. He took the property by deed which expressly recognized the validity of the lien, and as a part of the consideration for the conveyance to him, after purchasing the property for a total consideration of $900, his deed recites that the conveyance to him is "subject to a first lien in favor of Standard Savings & Loan Association in the sum of about $1050.00"; this deed warrants the title to Miller, "subject, however, to said encumbrance in favor of Standard Savings & Loan Association, above mentioned." Rice-Stix D. G. Co. v. First Nat. Bank (Tex.Com.App.) 231 S.W. 386; Wooten Motor Co. v. First Bank (Tex.Com.App.) 281 S.W. 196; Bookhout v. McGeorge (Tex. Civ.App.) 65 S.W.(2d) 512.

All assignments of error being considered, they are overruled, and the judgment of the trial court is affirmed.