MRS. EVA JAMES WILSON v. JOHN R. HINTON ET AL.

No. 7189.   Decided May 11, 1938.
Rehearing overruled June 22, 1938.
(116 S. W., 2d Series, 365.)

*Renfro, McCombs & Kilgore,* of Dallas, for plaintiff in error.

Where the mechanic's lien contract renewed and extended a note and the deed of trust securing it were valid in that it was executed before the work was begun and the material furnished, and the contracts were regular in form and duly acknowledged and the repairs and improvements completed in accordance with such contract, the claim that the liens were invalid because an assignee of the notes and liens furnished the money to pay for the work and material is insufficient to establish the invalidity of the deed of trust. Ormsby v. Ratcliffe, 117 Texas 242, 1 S. W. (2d) 1084; First Natl. Bank v. Campbell, 46 S. W. 845; Garrett v. Katz, 23 S. W. (2d) 436.

*Geo. Q. Youngblood* and *W. H. Reid,* both of Dallas, for defendant in error.

The pleadings of Mrs. Wilson were whole insufficient on the question of estoppel. Hill v. Engel, 89 S. W. (2d) 219; Thomas v. Creagor, 107 S. W. (2d) 705; Miller v. Southland L. I. Co., 68 S. W. (2d) 558.

MR. JUDGE GERMAN, of the Commission of Appeals, delivered the opinion for the Court.

Prior to May 3, 1929, defendants in error John R. Hinton and wife, Beulah Hinton, had their home upon a 4 acre tract of land near Grand Prairie, Dallas County, Texas. On the date mentioned this home was burned. It was covered by a policy of insurance, and the insurance money was used to discharge a vendor's lien upon the tract of land. There was adjoining the 4 acres a 3.6 acre tract upon which was situated an old six-room house. They decided to purchase the 3.6 acres, to make certain repairs and improvements on the house, and to make it their home. They were without money to purchase the 3.6 acres. An

arrangement was made with the Reliance Building & Loan Company to furnish the purchase money. In pursuance of the arrangement, the property was bid in at judicial sale by one B. F. McGlothin, the Reliance Building & Loan Company furnishing the purchase money. On August 15, 1929, McGlothin and wife executed a general warranty deed to John R. Hinton, for a recited consideration of $1500, of which $500 was recited as paid in cash and $1000 was evidenced by a note executed by Hinton and wife, reciting reservation of vendor's lien on the 3.6 acres of land to secure payment of same. The deed likewise contained reservation of vendor's lien. This deed was promptly placed of record and the note was duly assigned by McGlothin to the Reliance Building & Loan Company.

The Hintons were without money to repair the house and put it in suitable condition as a home. The Reliance Building & Loan Company agreed to supply the money for the purpose of making the improvements and repairs. On August 15, 1929, Hinton and wife executed two contractor's and mechanic's lien contracts upon the 3.6 and the 4 acres. In each of the contracts W. C. Kirby was named as contractor. These contracts are regular in from and upon their face comply with the statutory requirements. They provided for the "erecting and constructing of certain improvements, towit: repairing roof, refinishing interior and porch, foundation, and laying gas pipe, etc." It is further provided that the contractor will furnish all materials and labor and construct the improvements according to plans and specifications. One of the liens contracted for was to secure the payment of a note for $1050, and the other was to secure the payment of a note for $675.00.

The improvements contracted to be done upon the house were constructed and there is no complaint that they were not fully completed or not completed according to the contract. About the time the improvements and repairs were completed Hinton and wife moved into the house and made it their home. The manner in which the materials were supplied and the labor done will be hereinafter more fully stated. Contemporaneously with the execution of the contracts and notes, W. C. Kirby assigned the notes and the liens to the Reliance Building & Loan Company.

The Reliance Holding Corporation in some way became the holder of the notes and liens above mentioned. On April 23, 1931, Hinton and wife executed to said corporation a note for the sum of $2400 in renewal and extension of the balance due upon said notes. On the same date they executed to Ellis P. House, trustee,

a deed of trust lien upon the 3.6 acre tract of land and upon the 4 acre tract to secure the Reliance Holding Corporation in the payment of the above mentioned note for $2400. This deed of trust recited that it was given in extension of the unpaid balance upon the mechanic's lien note for $675 and upon the mechanic's lien note for $1050 and the vendor's lien note for $1000, all of which are described by reference to the contracts and deed, and the book and page of their record, and the liens created by said instruments are carried forward and extended.

On April 25, 1931, the Reliance Holding Corporation, for a valuable consideration, duly assigned the $2400 note and all liens securing same to Lee Wilson, the husband of plaintiff in error.

Default was made in payment of monthly installments due on the note for $2400, and in December, 1933, plaintiff in error Mrs. Lee Wilson, executrix of the estate of Lee Wilson, deceased, attempted to sell the lands described in the deed of trust of date April 23, 1931, by virtue of the power therein given. The present suit was instituted by Hinton and wife against Mrs. Wilson, and the acting trustee, seeking an injunction to restrain sale under the deed of trust. Mrs. Wilson answered, and filed cross action seeking to foreclose the liens evidenced by the deed of trust and the various instruments heretofore mentioned. Hinton and wife will be referred to as plaintiffs, and Mrs. Wilson will be referred to as defendant.

The case went to trial upon the cross action, and judgment in the trial court was in favor of defendant for the balance due upon the $2400 note, with the foreclosure of lien upon the two tracts of land. The Court of Civil Appeals reversed and remanded the cause, and in doing so held that the mechanic's liens given to secure the $1050 note and the $675 note were void. No reason for such holding was given. The Court held, however, that to the extent that the purchase money for the 3.6 acre tract was unpaid, defendant had a valid lien. 97 S. W. (2d) 251.

It is not contended that the mechanic's liens were not executed in the manner and form required by the Constitution and statute. They appear on their face to be valid liens. It is the contention of plaintiffs that they failed to create a valid lien upon the homestead for the following reasons: It appears without dispute that W. C. Kirby, the purported contractor, was not a contractor, and did not in any manner furnish materials or supervise the work or act as a contractor. He was merely a dummy for the Reliance Building & Loan Company. He did a little labor on the job at the request of Hinton and was paid

approximately $50 for such labor. It seems to be further undisputed that Hinton himself was entrusted with the duty of contracting for labor and materials and supervising the construction of the improvements upon the house. It is also undisputed that the Reliance Building & Loan Company did not advance the whole of the $1720 to Hinton as a loan, but paid for the materials and labor as the same became due and payable. As the proof upon this point is of importance, we quote the testimony of Hinton himself as follows:

"Q. Did Mr. Kirby pay for the work that was done on that house?
"A. No sir.
"Q. How was it paid for?
"A. I paid for it; that money I got from the Reliance Building & Loan Company, is what I paid for it with."
Continuing he testified:
"Q. Where did you get the money to make those improvements?
"A. From the Reliance Building & Loan Company.
"Q. Was that paid to you in one sum or how was it paid?
"A. No, it was in several different payments; their attorney handled the papers and all that, and when I needed money they would give me a check for it."

1  It is undisputed that the old house on the 3.6 acre tract was not suitable for a home in which to live when the contracts were made, as it had no roof and no floor. It appears that plaintiffs moved into the house a short time before the improvements were completed, but that the work done thereafter was necessary to make the home suitable as a completed dwelling. It is doubtful, therefore, that at the time plaintiffs executed the various contracts mentioned they had any homestead. The house on the four acres had been burned and the insurance money was used in discharging the vendor's lien. The house on the 3.6 acres was unfit for occupancy as a home. The purchase of the 3.6 acres and the contracts for improvements were executed simultaneously, and the various sums therein mentioned in reality constituted the purchase price of a homestead, which came into existence when the house was finally made suitable for occupancy as a home. Bayless v. Standard Savings & Loan Assn., 39 Texas Civ. App. 353, 87 S. W. 872 (writ ref.).

2, 3  The evidence in the case absolutely negatives the idea of a loan to Hinton, with privilege on his part to proceed indiscriminately in the purchase of materials and the furnishing of labor. On the contrary, it shows that the Reliance Building & Loan

Company was in fact the real contractor (Williford Lumber Co. et al. v. Malakoff Brick Co. et al., 113 S. W. (2d) 248), and Hinton merely acted as agent for the company in making the improvements. Since the outstanding case of Downard v. National Loan & Inv. Co., 22 Texas Civ. App. 570, 55 S. W. 981, it has become the established law of this State that the lien contemplated by the Constitution and statute may be created in favor of one who actually furnishes labor and material, under a written contract, which is used in the construction of an improvement, even though the same may be furnished through the agency of some one else. And furthermore, that a contract or lien, which excludes the idea of a mere loan, and is executed in accordance with the formalities required by the Constitution, with the real purpose and effect of thereby securing the necessary labor and materials actually used in constructing improvements upon the homestead, and especially where the improvements are essential to the very existence of a homestead, should be upheld. The recent cases of Grammar v. Hesperian Building & Savings Assn., 70 S. W. (2d) 220; Standard Savings & Loan Assn. v. Davis, 85 S. W. (2d) 333, and Miller v. Standard Savings & Loan Assn., 88 S. W. (2d) 522, in all of which writs of error were refused, are so directly in point, and are so conclusively supported by the numerous authorities cited therein, that further discussion of the matter is unnecessary.

We think that, as a matter of law, the plaintiffs were in no position to show that the $1000 note, recited in the deed as well as in the deed of trust to constitute a part of the purchase price of the 3.6 acres, was not in fact all for purchase money.

The judgment of the Court of Civil Appeals is reversed and judgment of the trial court is affirmed.

Opinion adopted by the Supreme Court May 11, 1938.

Rehearing overruled June 22, 1938.