**SAN ANTONIO BANK & TRUST COMPANY et al., Appellants,**

v.

**ANEL, INC., Appellee.**

No. 8797.

Court of Civil Appeals of Texas, Texarkana.

Feb. 24, 1981.

Rehearing Denied March 24, 1981.

James L. Drought, Calhoun Bobbitt, Brite, Drought, Bobbitt & Halter, San Antonio, for San Antonio Bank & Trust.

Craig L. Austin, San Antonio, for George Livesay, et al.

F. Edward Barker, Corpus Christi, for appellee.

BLEIL, Justice.

Anel, Inc. sued the San Antonio Bank & Trust Company for foreclosure of mechanic's and materialman's liens arising from the construction of a condominium project in Comal County. The trial court entered a judgment on the jury verdict in favor of Anel, Inc., foreclosing the lien, and ordering the sale of the Bank property. An appeal has been perfected by the San Antonio Bank & Trust Company from that judgment.

Prior to the trial of the case certain individual purchasers of condominium units filed a petition in intervention which was stricken by the trial court on motion of Anel, Inc. These condominium owners appeal from the court's order striking their petition in intervention.

During 1971, Global Land Corporation, a real estate developer, acquired all of the property involved in this proceeding from Hanno Guenther and Dorothy Guenther by general warranty deeds with vendor's liens retained. In June of 1973, Global entered into a construction contract with appellee, Anel, Inc., for a 45–unit condominium project to be built for $837,000.00.

That contract, together with the site plans incorporated therein, was submitted to San Antonio Bank & Trust Company for evaluation in connection with the Bank's consideration of lending money to Global for the project. The site plans showed the dimensions of the proposed condominium buildings and the lots upon which they were to be located.

On June 20, 1973, the Bank issued its commitment to lend Global Land Corporation up to $1,200,000.00 for the project.

On July 10, 1973, Global executed a note in the amount of $1,200,000.00 and a deed of trust securing the payment of the note. This deed of trust covered each lot upon which, according to the contract between Global and Anel, improvements were to be constructed and it conformed with the requirement contained in the commitment letter that the Bank receive a first lien and deed of trust on improvements to be constructed. On July 27, 1973, the deed of trust was recorded in Comal County.

The same day the Bank advanced $50,-000.00 of the loan which was used to retire the purchase money indebtedness still owed to the Guenthers on the lots covered by the $1,200,000.00 deed of trust and to discharge their vendor's lien thereon.

On September 5, 1973, Anel submitted its first application for payment, which purported to cover the period beginning August 1, 1973, and ending August 31, 1973. Of the sum of $25,110.00 requested therein, most was for bonds, insurance and general job expense; $4,000.00 was for site work and paving. Anel represented that no work had been completed on any of the buildings at that time.

Work on the buildings progressed until the early part of 1974 when the Bank was informed that the sewer plant for the project would cost some $139,000.00 more than planned. The Bank agreed to lend Global the additional $139,000.00, and Global executed another note evidencing the additional loan and its deed of trust securing payment and covering the same lots covered by the first deed of trust.

In June of 1974, Anel approached the Bank and related that Global had, over the preceding three or four months, failed to pay Anel sums totalling approximately $63,-000.00 for work completed, although the Bank had disbursed loan funds to Global for this purpose.

As a result of Global's delinquency and in anticipation of the possibility that Global might not ever cure its default, Anel and the Bank entered into direct negotiations to arrive at an arrangement whereby Anel would complete the project but would par-

ticipate in the net sale proceeds of the project in the event the Bank should acquire the property through foreclosure of the Bank's liens.

Ultimately Anel and the Bank entered into a written participation agreement. The agreement recognized Global's indebtedness and the Bank's liens, and provided that in the event of foreclosure by the Bank, Anel would participate in the ownership of the property to the extent of about four per cent (4%). The agreement provided that if foreclosure occurred, the Bank was to have the management rights over the condominium project.

Later, the Bank discovered that certain building locations had been changed and that improvements were being constructed upon lots which were not included in the two previous deeds of trust. In August of 1974, the Bank loaned Global an additional $201,000.00 to cover additional costs. This was secured by a third deed of trust which included the newly discovered lots and improvements.

As the project proceeded, Anel's draw requests were paid in due course until Global refused to approve payment of the last request, in an amount of approximately $28,000.00. In April of 1975 Global Land Corporation went bankrupt. The Bank petitioned the bankruptcy court to abandon the Canyon Lake project on the ground that there was no equity in the project for unsecured creditors. In October of 1975, the property was abandoned and the Bank was free to proceed with foreclosure. On November 4, 1975, the Bank bid in all lots covered by its three deeds of trust for a total consideration of $525,000.00, and received trustee's deeds therefor. On December 2, 1975, Hanno Guenther's prior security interest in certain lots was foreclosed and the Bank purchased those lots for $75,-000.00. Anel filed this suit against the Bank in December of 1975, asserting a lien upon the property.

Following its acquisition of the property, the Bank took possession of the project with a view toward preparing the condominium units for sale to the public.

After completion of the project, the Bank began selling condominium units to the public. Certain of these condominium owners, individually and as representatives of the others, attempted to intervene in the suit, taking the position that as record title owners in possession of the property against which Anel now asserted a constitutional lien, they had an interest in the suit. The trial court did not allow their intervention.

The judgment declared and foreclosed a mechanic's and materialman's lien upon the property and ordered its sale to satisfy Anel's claim in the amount of $89,068.55, plus interest.

Appellant, San Antonio Bank & Trust Company, raises twenty-five points of error on this appeal. The threshold question is whether by its entry into the participation agreement Anel waived its constitutional mechanic's and materialman's lien as a matter of law. Appellee Anel relies on certain authorities which stand for the proposition that for mechanic's and materialman's liens to be waived, the intention to do so must be expressed or made plain and clear. *Dillard v. McGinty*, 17 S.W.2d 167 (Tex.Civ.App.-Amarillo 1928, no writ); *Jines v. Dodson*, 279 S.W. 557 (Tex.Civ.App.-Amarillo 1926, writ ref'd). Also, appellee urges that the presumption is always against the waiver of the lien. 36 Tex.Jur.2d Liens § 24.

To support its position, other cases in which there was no agreement between the contractor and owner are cited by Anel for their holdings that the mechanic's and materialman's lien is not waived under the various circumstances of those cases. *Jones v. White*, 72 Tex. 316, 12 S.W. 179 (1888); *Keystone Pipe & Supply Co. v. Wright*, 37 S.W.2d 227 (Tex.Civ.App.-Fort Worth 1931, no writ); *Compton v. Jennings Lumber Co.*, 295 S.W. 308 (Tex.Civ.App.-Eastland 1927, writ dism'd); *Breckenridge City Club v. Hardin*, 253 S.W. 873 (Tex.Civ.App.-Fort Worth 1923, no writ).

San Antonio Bank & Trust Company urges as authoritative several cases where mechanic's and materialman's liens are waived by the entry of the parties into an

agreement inconsistent with the existence of a lien. In *Nystel v. Gully*, 257 S.W. 286 (Tex.Civ.App.-Austin 1923, no writ), the owner who sought in that suit to impose a laborer's lien upon certain property, had entered into a written contract affecting the parties. As a part of that agreement, the plaintiffs-lienholder had agreed that the owner could at any time sell the property upon which the liens were asserted. The owner specially excepted to portions of the laborer's pleadings which sought to enforce liens for the reason that the right to the benefits under the agreement was utterly inconsistent with the right to fix liens and that by virtue of the contract the laborer had waived the liens. On appeal, the court held that the trial court correctly sustained the exception because on the face of the pleading it appeared that should a sale under the contract be made, the passing of title free and unencumbered would be inconsistent with the lien given by law which the laborer sought to enforce. The court held,

> "... We are therefore of the opinion that the rule of law announced by numerous authorities, which hold that where one enters into a contract, the complete performance of which, according to its true intent and terms, is inconsistent with the existence of a lien given by law, he thereby foregoes and waives the lien which the law would otherwise give him, is a correct one and applies in this case.... "

In the case of *De Bruin v. Santo Domingo Land & Irrigation Co.*, 194 S.W. 654 (Tex. Civ.App.-San Antonio 1917, writ ref'd), it was held that evidence of a laborer's intent not to waive a lien would be inadmissible where the execution of a written mortgage by the laborer might have been waiver as a matter of law. See also *Shirley-Self Motor Co. v. Simpson*, 195 S.W.2d 951 (Tex.Civ. App.-Fort Worth 1946, no writ).

While none of the cases cited above seems to provide any clear-cut guidelines, it becomes apparent that the attempts of a lienholder to cloud the title which he has acquired by the enforcement of his participation agreement should be denied.

The constitutional liens exist to provide relief for the laborer who is not compensated and, who, for one reason or another, does not meet the requirements of perfection of the statutory mechanic's and materialman's liens. Here, we find that the contractor made provisions in the event of the financial demise of the developer, and dealt with the Bank directly, and in contemplation of the possibility that the Bank might obtain title to the project. The waiver of the constitutional lien is not expressed in so many words. It is, nonetheless, an election of Anel's remedies, and Anel will not now be heard to foreclose in abrogation of the Bank's rights, which Anel itself expressly contemplated. Although in this suit Anel seeks to enforce its constitutional mechanic's and materialman's liens, it previously did not perfect, nor seek to enforce, the statutory liens provided by the legislature. Rather, Anel entered into the November 22, 1974, participation agreement with the Bank.

In the participation agreement it was provided, in part, that

> "1. That for and in consideration of Anel's continuing and completing its work under the aforesaid general contract on the project, the Bank covenants and agrees that in the event the Bank (or any assignee of the Bank) shall cause foreclosure of any of the aforesaid notes or deeds of trust or other securities securing same and ... if the real property or other security which is the subject of said foreclosure proceeding is acquired by the Bank or other holder of said deeds of trust or security interests, then Anel shall from the time of such acquisition of said property participate in the ownership of said property so acquired to the extent of 3.930131% until all of said property is sold and disposed of, and until the sale and disposition of all of said property so acquired, Anel shall participate in the expenses and income from the same to the extent of 3.930131%.

> "2. In the event the Bank obtains title to the property as aforesaid in a foreclosure proceeding so as to bring into effect

the participation in ownership thereof by Anel as provided in the preceding paragraph, then the Bank shall have the exclusive right to manage and control said property and may arrange and determine all of the details and determinations in connection therewith as in its sound discretion seems best."

Prior to and after the execution of the participation agreement, Anel worked for Global Land Corporation under an arrangement whereby the Bank was to see to it that payments were received. The Bank did in fact see to it that Anel was paid at every step of the proceeding until the dispute over the final payment arose.

The action of Appellee Anel in foregoing perfection and enforcement of its statutory lien, coupled with the entry into the participation agreement, is totally inconsistent with the subsequent assertion and enforcement of a constitutional mechanic's and materialman's lien upon the property.

Appellants, George Livesay, et al, have complained of the trial court's action striking their petition in intervention claiming that as subsequent purchasers of some of the property in question without notice of any lien, no enforcement of such constitutional lien may be had against their properties citing *Dee's Cabinet Shop, Inc. v. Weber*, 562 S.W.2d 945 (Tex.Civ.App.-Fort Worth 1978, no writ); *Stone v. Pitts*, 389 S.W.2d 601 (Tex.Civ.App.-Waco 1965, no writ), and other authorities.

Appellant, San Antonio Bank & Trust Company, raises twenty-four additional points of error. In light of our holding that the lien sought to be enforced has been waived, no disposition is made of these points.

The judgment of the trial court is reversed and judgment is rendered that appellee take nothing by its suit.