**In re ADELPHIA COMMUNICATIONS CORP. et al., Debtors.**

**No. 03 Civ. 609(HB).**

United States District Court, S.D. New York.

Aug. 25, 2003.

### OPINION AND ORDER

BAER, District Judge.[1]

John Rigas, Timothy Rigas, James Rigas, and Michael Rigas (the "Rigases") appeal, pursuant to 28 U.S.C. § 158(a)(1), from the Bankruptcy Court's order, *In re Adelphia Communications Corp.*, 285 B.R. 580 (2002), staying civil litigation in regard to Directors' and Officers' ("D & O") liability insurance. Although the Bankruptcy Court granted in part the Rigases relief from the bankruptcy stay by permitting them to apply for up to $300,000 for their legal defense costs under the D & O insurance, the Bankruptcy Court determined that the D & O insurance policy is an asset of the debtor, thus litigation to cancel or rescind the D & O policy required relief from the stay, and such application was denied by the Bankruptcy Court. The Rigases seek payment or advancement of up to the $300,000 amount from the insurance companies regardless of the insurance companies' rescission and exclusion of the claims. For the following reasons, the Bankruptcy Court's order is vacated and remanded for further findings.

## I. BACKGROUND

A majority of the background facts is set forth in *In re Adelphia Communications Corp.*, 285 B.R. 580 (2002), and the Court assumes familiarity with them. Only a summary of the facts that are useful and relevant to deciding the appeal is reviewed here.

The appellees include Adelphia Communications Corporation ("ACC") and Adelphia Business Solutions, Inc ("ABIZ"), collectively ("Adelphia"), both of which are in chapter 11 reorganization. ACC was the parent company of ABIZ before it spun off ABIZ. Before the chapter 11 petitions, ACC had purchased a Directors' and Officers' insurance policy from Associated Electric & Gas Insurance Services, Ltd. ("AEGIS") that provided $25 million of insurance coverage. ACC also acquired excess D & O policies from Federal Insurance Company and Greenwich Insurance Company[2] for $15 million and $10 million, respectively. The D & O policies provide coverage for Adelphia and directors and officers for losses that the entity or the officers and directors may become obligated to pay on account of claims made for "wrong acts." *Adelphia*, 285 B.R. at 592. After the spin off, ABIZ agreed to pay premiums to the insurers so that ABIZ and its directors and officers would also have coverage under the D & O policies that ACC purchased.

The Rigases are now charged with multiple counts of corporate fraud in the management of Adelphia, and are defendants in numerous civil and criminal proceedings. The Rigases seek reimbursement of legal defense fees from the insurers for litigation arising out of their alleged fraudulent activities, but have been unable to seek such reimbursement because of the automatic bankruptcy stay. On September 13, 2002, the Rigases filed a motion with the Bankruptcy Court seeking relief from the automatic stay and to allow payment and/or advancement of defense costs under the D & O policies. *Adelphia*, 285 B.R. at 588. The Bankruptcy Court concluded that the proceeds were subject to a stay under 11 U.S.C. § 362(a)(3), *id.* at 590, 592, and held that the insurers and the Rigases would need to move for relief

---

1. Gabe Miller, an intern in my Chambers during the summer of 2003 and a second-year law student at Columbia Law School, provided assistance in the research and drafting of this opinion.

2. For convenience, the insurance companies will be referred to collectively as the "insurers."

from the stay if either sought to litigate the validity of the D & O insurance policies[3] or the obligations thereunder. *Id.* at 590, 593. The Bankruptcy Court granted the Rigases partial relief from the stay, pursuant to 11 U.S.C. § 362(d)(1). In particular, the Bankruptcy Court modified the automatic stay to permit the Rigases to request, and allow the insurers to pay, if the insurers agreed, up to $300,000 per insured for defense costs. *Id.* at 600. The Bankruptcy Court, however, restricted all insurance-related litigation, including litigation to draw down from the policies if the insurers refused to voluntarily pay the Rigases claims, until after the conclusion of the criminal proceedings against the Rigases, which is scheduled to commence January 2004. The Rigases contend that the Bankruptcy Court erred in:

1. Finding that the $300,000 claimed by each of the Rigases under the D & O policy constitutes property of Adelphia Communications Corporation ("Adelphia") and Adelphia Business Solutions, Inc. ("ABIZ") (collectively the "debtors") estates;

2. Staying all litigation relating to the D & O insurance policies,[4] pursuant to the automatic stay provision under 11 U.S.C. § 362(a)(3), including the litigation by the Rigases against the insurance companies to recover money under the D & O policies;

3. Refusing to lift the automatic stay under 11 U.S.C. § 362(d); and

4. Making certain statements in its Order that should have no binding effect on the parties to the D & O insurance policy.

## II. DISCUSSION

### A. Standards of Review

 This Court reviews the Bankruptcy Court's findings of fact for clear error, and generally speaking, findings that involve questions of law or mixed questions of fact and law are reviewed *de novo*. *In re United States Lines, Inc.*, 197 F.3d 631, 640–41 (2d Cir.1999). Because the inquiry required to evaluate whether to lift a stay is "very fact specific and involve[s] the weighing of numerous factors peculiar to the particular case," *In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1288(2d Cir.1990), such decision by a bankruptcy court is committed to its sound discretion and is reviewable only for abuse-of-discretion. *In re Mazzeo*, 167 F.3d 139, 142 (2d Cir.1999); *see Stonington Partners, Inc. v. Lernout & Hauspie Speech Products N.V.*, 310 F.3d 118, 122 (3d Cir.2002); *Sunshine Development, Inc. v. F.D.I.C.*, 33 F.3d 106, 111 (1st Cir.1994); *In re Eagle–Picher Industries, Inc.*, 963 F.2d 855, 858 (6th Cir.1992).

### B. Appeal from Stay of Litigation[5]

It is well settled that insurance *policies* are covered by the automatic stay provi-

---

3. The insurers seek to rescind the insurance policies on the grounds that the Rigases and/or Adelphia made fraudulent representations that vitiate the policies.

4. The policies contain various exclusions to the reimbursement of defense costs. Most notably, there are restrictions on a director or officer recovering where the claims at issue (i) are attributable to his own self-dealing; (ii) are based on his or her own criminal or dishonest conduct; (iii) are brought about by or on behalf of Adelphia itself; or (iv) arise

out of facts and circumstances about which the officer had knowledge at the inception of the policy period but failed to disclose to the insurer. The insurers contend that one or more of restrictions in the policies are clearly applicable to the conduct of the Rigases and that the policies should be rescinded. Thus, they filed a rescission action on September 26, 2002.

5. The insurers argue as a threshold matter that appeal of the stay on the Rigases' claims for payment under the D & O policies is not

sion of the Bankruptcy Code, *see MacArthur Co. v. Johns–Manville Corp.*, 837 F.2d 89 (2d Cir.1988); *see also Louisiana World Exposition*, 832 F.2d at 1399 ("There are a great many bankruptcy cases holding that liability insurance *policies* that provide coverage for the bankrupt's liability belongs to the bankrupt's estate." (emphasis in original)). The Rigases do not dispute that the policies involved in this appeal are an asset of the debtors' estate, and are therefore subject to the automatic stay under 11 U.S.C. § 362(a)(3).

▮ The Rigases first prong of attack on the Bankruptcy Court's order centers on whether the Bankruptcy Court correctly categorized the $300,000 of proceeds, that the Bankruptcy Court permitted them to claim under the policy, is an asset of the debtor, which remains subject to an automatic stay under 11 U.S.C. § 362(a)(3). Section 362(a)(3) automatically enjoins "all entities" from "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." Section 541 of the Bankruptcy Code defines "property" of a debtor's estate as "all legal and equitable interests of the debtor." While some courts have held that the proceeds of a D & O policy are property of the debtor's estate and subject to the automatic stay, *see, e.g., In re Vitek*, 51 F.3d 530 (5th Cir.1995); *In re Minoco of Group of Cos., Ltd.*, 799 F.2d 517 (9th Cir.1986); *In re Sacred Heart Hospital of Norristown*, 182 B.R. 413 (Bankr.E.D.Pa.1995); *In re Circle K Corp.*, 121 B.R. 257 (Bankr.D.Ariz. 1990), others have held to the contrary, *see, e.g., In re Louisiana World Exposi-*

*tion*, 832 F.2d 1391 (5th Cir.1987); *In re Youngstown Osteopathic Hosp. Ass'n*, 271 B.R. 544 (Bankr.N.D.Ohio 2002); *In re CHS Electronics, Inc.*, 261 B.R. 538 (Bankr.S.D.Fla.2001); *In re Daisy Sys. Sec. Litig.*, 132 B.R. 752 (N.D.Cal.1991); *In re Zenith Labs., Inc.*, 104 B.R. 659 (D.N.J.1989). Neither I, nor any of the parties have located any decision by the Second Circuit on this subject, and thus the issue appears to be one of first impression in this Circuit.

Here, as far as I can tell, Adelphia does not have a property interest in the proceeds of the insurance policies yet. Although the D & O policies reimburses each estate to the extent that the estate advances funds because of the indemnification obligations in the charter or by-laws, *see Adelphia*, 285 B.R. at 592, "[i]t has not been suggested that any of the Debtors has made any payments for which it would be entitled to indemnification coverage, or that any such payments are now contemplated," *id.* at 587. Furthermore, "none of the Debtors [have] made or committed themselves to payments using their entity coverage." *Id.* Claiming the debtors now have a property interest in those proceeds makes no sense at this juncture. Such argument would be akin to a car owner with collision coverage claiming he has the right to proceeds from his policy simply because there is a prospective possibility that his car will collide with another tomorrow, or a living person having a death benefit policy, and claiming his beneficiaries have a property interest in the proceeds even though he remains alive. No cognizable equitable and legal interest in the proceeds from the D & O policies has arisen here. Without legal and equitable

ripe because the Rigases never raised the issue below. I disagree. The Rigases had sought the specific relief now requested, *see* Rigases' Motion for Relief ¶ 21, which the Bankruptcy Court rejected. *See Adelphia*,

285 B.R. at 596 ("All of these factors tilt strongly in favor of denial of relief from the stay at this time, with respect to *all* insurance-related litigation.").

interest in the proceeds, Adelphia's estate cannot be ascribed to hold a property interest in those proceeds.

The fact that the stay under 11 U.S.C. § 362(a)(3) may not apply automatically does not render the Bankruptcy Court's decision to stay litigation between the Rigases and the insurers necessarily subject to reversal. Section 105 of the Bankruptcy Code provides bankruptcy courts with broad discretion to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105. It is well settled that bankruptcy courts, under this provision, may extend the automatic stay to "enjoin suits by third parties against third parties if they threaten to thwart or frustrate the debtor's reorganization efforts." *In re Granite Partners, L.P.,* 194 B.R. 318, 337 (Bankr.S.D.N.Y. 1996); *see Teachers Ins.,* 803 F.2d at 65 (affirming bankruptcy court's order extending stay to non-debtors because "it contributes to the debtor's efforts to achieve rehabilitation."); *MacArthur Co. v. Johns–Manville Corp.,* 837 F.2d 89, 93 (2d Cir.1988); *In re marchFIRST,* 288 B.R. 526, 530 (Bankr.N.D.Ill.2002); *In re Chateaugay,* 93 B.R. 26, 30 (S.D.N.Y.1988) (acknowledging bankruptcy court's authority to extend a stay pursuant to its injunctive power under § 105, despite the inapplicability of the automatic stay provision under 11 U.S.C. § 362); *In re Neuman,* 71 B.R. 567, 571 (S.D.N.Y.1987) (same); *see also In re Wolf Fin.,* 1994 WL 913278, at *4 (acknowledging that under "unusual circumstances" the scope of the automatic stay § 362 may be "extended" to encompass non-debtors). When the stay does not apply automatically, the debtor then bears the burden of demonstrating that circumstances warrant extending the stay. *In re Third Eighty–Ninth Assocs.,* 138 B.R. 144, 146 (S.D.N.Y.1992).

Although § 362(a) stays generally apply only to bar proceedings against the debtor, *Teachers Ins.,* 803 F.2d at 65, they may be extended, for instance, when "a claim against the non-debtor will have an immediate adverse economic consequence for the debtor's estate." *Queenie, Ltd. v. Nygard Int'l,* 321 F.3d 282, 287 (2d Cir.2003). "Examples [may include] a claim against the debtor's insurer." *Id.* The proof required to extend the stay is not as rigorous as that normally required for injunctions. *Cf. Procter & Gamble Co. v. Chesebrough–Pond's Inc.,* 747 F.2d 114, 118 (2d Cir.1984). Because the "basic purpose of [§ 105(a) ] is to enable the court to do whatever necessary to aid its jurisdiction, *i.e.,* anything arising in or relating to a bankruptcy case," *In re Neuman,* 71 B.R. at 571 (quoting 2 Collier on Bankruptcy ¶ 105.02 at 105–3 (15th ed. Supp. 1986)), the Second Circuit, courts in this District, and courts in other circuits have "construed [§ 105] liberally to enjoin suits that might impede the reorganization process." *Johns–Manville,* 837 F.2d at 93, and embraced the use of § 105 without proof of all four factors normally required for injunctions, such as inadequate remedy of law or irreparable harm. *Id.; Fisher v. Apostolou,* 155 F.3d 876, 882 (7th Cir. 1998); *In re Granite Partners,* 194 B.R. at 337 ("*Manville* ... stand[s] for the proposition that the court can and should enjoin suits by third parties against third parties if they threaten to thwart or frustrate the debtor's reorganization efforts."); *In re Neuman,* 71 B.R. at 571–72; *In re Chateaugay,* 93 B.R. at 29. Whether a stay is appropriate must be resolved on a case by case basis. *In re CyberMedica, Inc.,* 280 B.R. at 16.

The problem here, however, is that the Bankruptcy Court assumed that the proceeds from the policies were assets of Adelphia's estate and automatically subject

to the stay under § 362(a)(3). As discussed above, that is not the case. The Bankruptcy Court, largely on the grounds of judicial efficiency and relative lack of harm to the Rigases, decided against lifting the stay. *Adelphia,* 285 B.R. at 595–96. Although findings of "unusual circumstances" may show the requisite economic harm to the debtor's estate or interference with the debtor's ability to reorganize to warrant extending the stay under § 362(a), *see In re Wolf Fin.,* 1994 WL 913278, at * 3–4 (Bankr.S.D.N.Y. Dec. 15, 1994), the Bankruptcy Court concluded that "this case [was only] *potentially* one of those few cases, involving 'unusual circumstances,' where section 362 itself applies." *Adelphia,* 285 B.R. at 601 (emphasis added). The Bankruptcy Court provided no supported finding as to the effect the narrower litigation between the Rigases and insurers would have on Adelphia, other than to speculate it would be "adverse." *See id.* at 600–01 (finding "unclear" the impact of a declaratory judgment on Adelphia if only the Rigases were named in the action by the insurers to contest their obligations under the policies). Without more, I cannot conclude that a proper foundation has been laid to show that a stay under § 362(a) can be extended pursuant to § 105(a). The order of the Bankruptcy Court staying the action by the Rigases is vacated and the matter remanded for further findings.

## C. Dicta in Bankruptcy Court's Opinion and Order

 The Rigases assert that statements made by the Bankruptcy Court in the November 2002 order were without any basis of fact and are now being relied upon by the insurers to support their refusals to provide funds under the D & O policies. In particular, the Rigases point to language where the Bankruptcy Court stated,

The corollary of this, of course, is that the Insurers may not be criticized for failing to make payments on the D & O policies here after they have attempted, in good faith, to litigate their duty to do so, and the Court has placed impediments in their way. This Court believes that they cannot be faulted for first wishing their day in court.

*Adelphia,* 285 B.R. at 601.

The Rigases seek to have this Court deem these and other statements dicta and not legally binding. "Whether the court's discussion … is dicta is better suited to be addressed in any subsequent litigation where the issue [discussed] arises." *RJE Corp. v. Northville Industries Corp.,* 329 F.3d 310, 316 (2d Cir.2003). Any opinion by me would be no more than advisory, and thus I decline to reach the matter.

## III. CONCLUSION

For the foregoing reasons, the Bankruptcy Court's order to stay litigation by the Rigases to collect under the D & O policies is vacated and remanded for further findings to determine whether the stay under § 362 should be extended pursuant to its power under § 105(a). Further, the Rigases' motion for a judicial declaration that statements made by the Bankruptcy Court constitutes dicta is denied.

**SO ORDERED.**