In re ENRON CORP., et al., Debtors,

**Enterprise Products Operating, L.P., Appellant,**

v.

**Enron Gas Liquids Inc., Appellee.**

No. 03 Civ. 7145(SAS).

United States District Court, S.D. New York.

Feb. 17, 2004.

**34**

Martin J. Bienenstock, Brian S. Rosen, Weil, Gotshal & Manges LLP, New York City, Gregory S. Coleman, Christian J. Ward, Weil, Gotshal & Manges LLP, Austin, Texas, for Debtor and Appellee.

David A. Rosenzweig, Fulbright & Jaworski, LLP, New York City, Zack A. Clement, R. Andrew Black, Fulbright & Jaworski, LLP, Houston, Texas, for Appellant.

### OPINION AND ORDER

SCHEINDLIN, District Judge.

Enterprise Products Operating, L.P. ("Enterprise") appeals from the order of the Bankruptcy Court (Gonzalez, J.) denying Enterprise's request for a self-executing lien pursuant to article XVI of the Texas Constitution.[1] At the heart of this dispute is Enterprise's claim for $528,486.70 in unpaid fractionation services

provided to Enron Gas Liquids, Inc. ("EGLI"). The Bankruptcy Court concluded that Enterprise was not entitled to a Constitutional Lien because it is not a mechanic, artisan, or material man.[2] Enterprise brings this appeal pursuant to Federal Rules of Bankruptcy Procedure 8001(a) and 8002(a), and 28 U.S.C. § 158(a). For the reasons set forth below, the Bankruptcy Court's decision is affirmed.

## I. BACKGROUND

The following facts are based on the record designated by the parties and the findings of the Bankruptcy Court.

### A. Events Leading to Bankruptcy Proceedings

Enterprise is a Texas-based energy company that specializes in the fractionation, transportation, and storage of natural gas liquids ("NGLs").[3] Fractionation is the process whereby Y-grade natural gas, or "Raw Make," [4] is separated into its salable parts: ethane, propane, iso-butane, normal butane, natural gasoline, EP mix ethane, and EP mix propane.[5] The process, in simplified terms, involves the following steps. *First*, Enterprise takes the Raw Make and removes the contaminants (carbon dioxide and hydrogen sulfide).[6] *Second*, the Raw Make is run through the first fractionation tower (the deethanizer). The tower is heated, causing the ethane to

---

1. 7/15/03 Memorandum Decision and Order Regarding Enterprise's Motion for Resolution of Dispute, No. 01 16034(AJG) ("7/15/03 Order"), Record on Appeal, Item 8 ("Rec. 8"). Enterprise also disputes the Bankruptcy Court's denial of its request for attorneys' fees pursuant to 11 U.S.C. § 506(b). *See* 7/24/03 Notice of Appeal, Rec. 9.

2. *See* 7/15/03 Order at 15.

3. Enterprise is a subsidiary of Enterprise Products Partners L.P. *See id.* at 3.

4. Raw Make is not salable on the open market. *See* Transcript of April 3, 2003 Oral Argument ("Tr."), Rec. 13, at 16 (statement of Terrance Hurlburt, Site Manager of Enterprise's Mont Belvieu Complex).

5. *See* 7/15/03 Order at 3; Brief of Appellant Enterprise ("Enterprise App. Mem.") at 3.

6. *See* Tr. at 16 (statement of Terrance Hurlburt).

rise and come into contact with a liquid that runs along the top of the column. The ethane is then "condensed in the overhead using about 10,000 horsepower refrigerators running at about 20 degrees,"[7] and pumped out as a "purity product."[8] *Third*, the remaining mixture is run through a series of fractionation towers, each removing different NGLs through similar vaporization/condensation processes. Enterprise operates this system continuously (*i.e.*, twenty-four hours per day, seven days per week), employing engineers responsible for setting the controls and parameters, and technicians responsible for monitoring the process, which, owing to the high heat and substances involved, is dangerous.[9]

On July 29, 1998, Enterprise entered into an agreement with EGLI whereby Enterprise provided fractionation, product treatment, and trucking and storage services ("Fractionation Agreement").[10] Under the Fractionation Agreement, EGLI delivered Raw Make to Enterprise's oil and gas processing and storage complex in Mont Belvieu, Texas ("Mont Belvieu Complex"), where Enterprise fractionated it.[11] Enterprise then treated, stored, and even-

tually transported these NGLs, as directed by EGLI.

On December 2, 2001, Enron Corp. and certain of its affiliated debtor entities, including EGLI, filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. At that time, Enterprise had issued invoices to EGLI for pre-petition fractionation and treatment services totaling $528,486.70.[12] Enterprise continued to store NGLs for EGLI until November 2002, when the Bankruptcy Court authorized the sale of those NGL inventories pursuant to section 363 of the Bankruptcy Code.[13] Enterprise then relinquished possession of the NGL inventories to be sold on the market by EGLI. Under the Sale Order, these NGLs were to be sold "free and clear" of liens. Any liens were to attach only to the proceeds of that sale.[14] The Sale Order set forth procedures for determining lien amounts, pursuant to which Enterprise was required to provide EGLI with written notice of its lien claims within thirty days of the Sale Order.[15]

On December 21, 2002, Enterprise notified EGLI of the following lien claims: (1) statutory liens of $359,572.39 for storage and trucking charges ("Trucking and Storage Lien Claim") and (2) a Constitutional

---

7. *Id.* at 19 (statement of Terrance Hurlburt).

8. *Id.*

9. *See id.* at 22, 30, 31 (statements of Terrance Hurlburt). According to Mr. Hurlburt, while he does not consider the Mont Belvieu employees "blue collar" workers, the job is "referred to as a blue collar job in many, many ways." *See id.* at 30.

10. *See* 7/15/03 Order at 3. The Fractionation Agreement is governed by and construed in accordance with the laws of Texas. *See* Fractionation Agreement, Ex. A to Enterprise's Brief in Support of Its Motion for Resolution of Dispute Arising Under the Sale Order ("Enterprise Mem.") ¶ 14.8, Rec. 2.

11. *See* Fractionation Agreement. The approximately 120—acre Mont Belvieu Complex

consists of eleven processing facilities in addition to numerous smaller facilities used for product treatment. *See* Tr. at 11 (statement of Terrance Hurlburt).

12. *See* Enterprise App. Mem. at 5; Brief of Appellee EGLI ("EGLI App. Mem.") at 3–4.

13. *See* 11/21/02 Order Granting Motion of EGLI for an Order Authorizing the Sale of Certain NGL Inventories Pursuant to Section 363 of the Bankruptcy Code ("Sale Order"), Rec. 1.

14. *See id.* ¶¶ 6–7; *see also* 11 U.S.C. § 363(f).

15. *See* Sale Order ¶ 8.

Lien of $528,486.70, relating to the fractionation and product treatment/finishing charges ("Fractionation and Product Treatment Lien Claim"). EGLI acknowledged Enterprise's Trucking and Storage Lien Claim, but disputed the Fractionation and Product Treatment Lien Claim.[16]

## B. The Bankruptcy Court Proceedings

On February 10, 2003, Enterprise filed a motion for resolution of the dispute arising under the Sale Order. Specifically, Enterprise sought an order directing EGLI to pay Enterprise $888,059.09 from the NGL inventories sale proceeds owing to it for fractionation and product finishing ($528,486.70), and storage and trucking services ($359,572.39).[17] Enterprise also sought post-petition attorneys' fees under 11 U.S.C. § 506(b).[18] Because EGLI acknowledged the validity of the Trucking and Storage Lien Claim, the sole issues before the Bankruptcy Court were (1) the validity of the Fractionation and Product Treatment Lien Claim and (2) Enterprise's rights, if any, to post-petition attorneys' fees. Enterprise argued that it was entitled to the Fractionation and Product Treatment Lien Claim under article XVI, section 37 of the Texas Constitution, which provides for a self-executing lien for mechanics, artisans, and material men upon the articles made by them, for the value of their labor.[19]

The Bankruptcy Court heard oral argument on the motion on April 3, 2003, and subsequently issued an opinion and order denying both the Fractionation and Product Treatment Lien Claim and Enterprise's request for attorneys' fees.[20] Judge Gonzalez held that a Constitutional Lien is unavailable to Enterprise because Enterprise is not a mechanic, artisan, or material man. Specifically, Judge Gonzalez stated:

> Although certain Enterprise employees might make use of tools and engage in the performance of manual labor, it is Enterprise's engineering acumen and ability to engage in highly technical, complex processes that lie at the core of Enterprise's business. Although Enterprise might be considered to be employed in the energy "industry," the Court finds that Enterprise's scientific and engineering sophistication, coupled with its sheer size, bring the company's operations beyond the scope of an "industrial or mechanic art or trade" as such terms are used in the definition of artisan. Finally Enterprise is not trained for manual dexterity in some mechanic art or trade.[21]

> [I]t is Enterprise as a company that is attempting to secure a Constitutional Lien, not those Enterprise employees who might qualify as artisans or materialmen on an individual basis.... [I]t is not clear ... that Enterprise's technicians would qualify as artisans or materialmen as such terms are used in the Constitutional Lien. However, even if those skilled technicians were judged to be artisans and materialmen, employing workers who might be eligible for a

---

16. *See* EGLI's Brief in Opposition to Enterprise's Motion for Resolution of Dispute Arising Under the Sale Order ¶ 10, Rec. 4; 7/15/03 Order at 4.

17. *See* Enterprise Mem. ¶¶ 10, 21.

18. *See id.* ¶ 22.

19. *See* Tex. Const. art. XVI, § 37.

20. *See* 7/15/03 Order. Because EGLI acknowledged the Trucking and Storage Lien, the Bankruptcy Court granted Enterprise's request for relief in the amount of $359,572.39. *See id.* at 15.

21. *Id.* at 8.

Constitutional Lien on an individual basis would not be sufficient to make Enterprise as a company either an artisan or a materialman.... Even if certain of Enterprises technicians would qualify as artisans or materialmen, Enterprise as an entity does not.[22]

Judge Gonzalez also denied Enterprise's request for post-petition attorneys' fees. He noted that section 506(b) does not allow for fees in the absence of an agreement between the parties providing for such fees. Because the Trucking and Storage Lien was not created pursuant to agreement between the parties and the Fractionation and Product Treatment Lien was deemed invalid, the Court held there was no contractual basis upon which to award fees.[23]

## II. STANDARD OF REVIEW

A bankruptcy court's conclusions of law are reviewed *de novo* and its findings of fact for clear error.[24] Mixed questions of fact and law are generally subject to *de novo* review.[25] Because the decision of the Bankruptcy Court involves mixed questions of fact and law, it is subject to *de novo* review.

22. *Id.* at 12.

23. *See id.* at 14.

24. Fed. R. Bankr.P. 8013; *see also In re Bayshore Wire Prods. Corp.*, 209 F.3d 100, 103 (2d Cir.2000); *In re Salem*, 290 B.R. 479, 482 (S.D.N.Y.2003).

25. *See In re Vebeliunas*, 332 F.3d 85, 90 (2d Cir.2003); *see also In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 988 (2d Cir.1990) ("This court exercises the same review over the district court's decision that the district court may exercise [over the bankruptcy court's decision].") (quoting *Brown v. Pennsylvania State Employees Credit Union*, 851 F.2d 81, 84 (3d Cir.1988)); *In re Adelphia Communications Corp.*, 298 B.R. 49, 52 (S.D.N.Y.2003).

## III. DISCUSSION

### A. The Constitutional Lien
#### 1. Legal Standard

#### a. The Constitutional Lien Generally

Article XVI, section 37 of the Texas Constitution provides, in relevant part:

Mechanics, artisans and material men, of every class, shall have a lien upon the buildings and articles made or repaired by them for the value of their labor done thereon, or material furnished therefor; and the Legislature shall provide by law for the speedy and efficient enforcement of said liens.[26]

The Texas Supreme Court has counseled that when interpreting the Texas Constitution, courts should "rely heavily on the plain language of the Constitution's literal text." [27] Courts may consider "the purpose of the constitutional provision, the historical context in which it was written, the collective intent ... [of] the people who adopted it, prior judicial decisions, the interpretations of analogous constitutional provisions by other jurisdictions, and constitutional theory." [28] "Since the constitution is an instrument adopted by the people generally before it has any vitality, the

26. Tex. Const. art. XVI, § 37. The history of the Constitutional Lien, which dates back to 1876, is described in *In re A & M Operating Co.*, 182 B.R. 997 (E.D.Tex.1995), *aff'd, Matter of A & M Operating*, 84 F.3d 433 (5th Cir.1996) (unpublished opinion).

27. *Spradlin v. Jim Walter Homes, Inc.*, 34 S.W.3d 578, 580 (Tex.2000); *see also Ball v. Davis*, 118 Tex. 534, 18 S.W.2d 1063, 1067 (1929) ("The words used in the Constitution are to be given their usual and ordinary signification, unless ... they are technical words.").

28. *Republican Party of Tex. v. Dietz*, 940 S.W.2d 86, 89 (Tex.1997).

words employed are to be interpreted as people generally understood them." [29]

The Fifth Circuit has remarked that "it is apparent that the Texas courts give a liberal construction to the provision of the Constitution, in an effort to give effect to its manifest intent." [30] The intention of the framers of the Texas Constitution was "to give full and ample security to all mechanics, artisans, and material men for labor performed and material furnished for the erection of all buildings," and by that reasoning, for the making and repair of all "articles." [31] Courts in Texas have long held the Constitutional Lien to be self-executing, which means that the lien-holder's protection is automatic—he is not required to give notice or record his lien to perfect his interest.[32] In that sense, the Constitutional Lien provision is unique and grants lien-holders a valuable remedy.[33]

### b. Limitations on the Constitutional Lien

There are several limitations on the scope of the Constitutional Lien.[34] Of paramount importance in the instant appeal is the limitation upon those to whom the lien is available—it only extends to "[m]echanics, artisans and material men, of every class." [35]

Texas courts have provided little guidance as to the meaning of the terms "[m]echanics, artisans and materialmen" [36] and often find a lien-holder qualifies under more than one category. For instance, the question before the court in *Warner Memorial University v. Ritenour* was: "Is a plasterer who works for a daily wage a mechanic or artisan, within the meaning of those words as employed in said constitutional provision?" [37] The court set forth separate definitions for the words "artisan" and "mechanic" but concluded, "We think a plasterer comes clearly within the definition of an artisan *or* mechanic." [38]

---

**29.** *Ball,* 18 S.W.2d at 1067.

**30.** *Reeves v. York Eng'g & Supply Co.,* 249 F. 513, 517 (5th Cir.1918); *see also Strang v. Pray,* 89 Tex. 525, 35 S.W. 1054, 1055 (1896).

**31.** *Strang,* 35 S.W. at 1055; *see also San Antonio Bank & Trust Co. v. Anel, Inc.,* 613 S.W.2d 55, 58 (Tex.Civ.App.1981) ("The constitutional liens exist to provide relief for the laborer who is not compensated and, who, for one reason or another, does not meet the requirements of perfection of the statutory mechanic's and materialman's liens.").

**32.** *See CVN Group, Inc. v. Delgado,* 95 S.W.3d 234, 246 (Tex.2002); *Hayek v. Western Steel Co.,* 478 S.W.2d 786, 790 (Tex.1972); *Strang,* 35 S.W. at 1056; *Astraea Aviation Servs., Inc. v. Nations Air Inc.,* 172 F.3d 390, 394 n. 10 (5th Cir.1999).

**33.** *See* M.K. Woodward, *The Constitutional Lien on Chattels in Texas,* 28 Tex. L.Rev. 305, 305 (1950); *see also In re A & M Operating Co.,* 182 B.R. at 1000 ("[T]he constitutions of only seven other states make reference to mechanic's liens, and only Texas' has been declared self-executing, making [this] constitutional lien unique among the fifty states.").

**34.** *See In re A & M Operating Co.,* 182 B.R. at 1000–01 (describing the various restrictions on the Constitutional Lien).

**35.** Tex. Const. art. XVI, § 37. Relatedly, the lien only covers "articles" or "buildings" made or repaired. *Id.* In some cases, a person's qualification as an artisan, mechanic, or material man may be informed by consideration of the articles that he makes or repairs. *See, e.g., Cotton Belt State Bank v. Roy H. Hatcheries, Inc.,* 351 S.W.2d 325, 326 (Tex. Civ.App.1961) ("Neither do we think appellee [chicken hatchery] is a 'mechanic,' 'artisan' or material man' who has 'made or repaired' an article within the terms of the Constitutional Lien. By [appellee's] incubation services it has neither 'made' a chicken, nor 'repaired' an egg.").

**36.** Tex. Const. art. XVI, § 37.

**37.** 56 S.W.2d 236, 236–37 (Tex.Civ.App. 1933).

**38.** *Id.* at 237 (emphasis added); *see also Ambrose & Co. v. Hutchison,* 356 S.W.2d 215, 217 (Tex.Civ.App.1962) ("There is ample evidence to sustain the court's implied finding

In part because courts have generally discussed the terms "artisan" and "mechanic" interchangeably, the term "artisan" for purposes of the Constitutional Lien has been left largely undefined. But at least one court has described an "artisan" as "one skilled in some mechanical craft; one who is employed in an industrial or mechanic art or trade," or "one trained for manual dexterity in some mechanic art or trade." [39] Thus, sign painters are considered "artisans." [40]

Corporations, as well as individuals, can qualify for the Constitutional Lien. There are no reported cases in which a corporation claiming artisan status has been denied a Constitutional Lien simply because it is a business entity, not a natural person. In addition, courts have implied that corporations claiming material man status are entitled to the protection of the Constitutional Lien. [41]

## 2. Analysis

█ Enterprise argues that it is entitled to a lien under the Texas Constitution because it is an artisan that made (fractionated and finished) articles (salable NGLs). The Bankruptcy Court disagreed, finding that Enterprise is not an "artisan" because (1) Enterprise is a company, not a laborer [42] and (2) the use of manual dexterity does not *define* Enterprise's activities because although some of its employees might use tools and perform manual labor, the core of its business lies in its technical complexity and engineering capabilities. [43]

Enterprise challenges the Bankruptcy Court's findings on two principal

---

that plaintiffs qualified as mechanics *or* artisans under the constitutional provision.") (emphasis added).

**39.** *Warner Mem'l Univ.*, 56 S.W.2d at 236–37; *see also Webster's Ninth New Collegiate Dictionary* 106 (1985) (defining "artisan" as "one (as a carpenter, plumber or tailor) trained to manual dexterity or skill in a trade").

"Mechanical" means "of or relating to machinery or tools." *Webster's Ninth New Collegiate Dictionary* 737. "Craft" means "an occupation or trade requiring manual dexterity or artistic skill." *Id.* at 302. Notably, performance of the fractionation and product finishing services does not require either manual dexterity or artistic skill.

**40.** *Warner Mem'l Univ.*, 56 S.W.2d at 237.

**41.** *See, e.g., In re A & M Operating Co.*, 182 B.R. at 1005 (finding that South Coast, a supplier of subcomponents used in high pressure vessels, qualified as a material man); *Reeves*, 249 F. at 513 (finding that a supplier of ice and refrigerating machinery qualified as a material man); *cf. First Nat'l Bank in Dallas v. Whirlpool Corp.*, 517 S.W.2d 262, 268 (Tex.1974) ("We hold that the constitutional lien on manufactured chattels is available to the manufacturer only upon articles made specifically for a purchaser pursuant to a special order and in accordance with the purchaser's plans or specifications."). As one author notes:

> One of the most significant of the problems in connection with the constitutional lien is the question of whether it may be claimed by corporations. It has been assumed, apparently on authority of an early supreme court case, *Fagan & Osgood v. Boyle Ice Machine Co.*, [65 Tex. 324 (1886),] that a corporation is entitled to the lien.... That the corporation could assert [the constitutional lien] has been taken for granted in cases involving the constitutional lien on both real estate and personalty. In the absence of authority in point, it seems likely that the courts will desire to adopt the construction which will extend the beneficent effects of the constitutional provision as far as possible, and that corporations will be held within its terms.

Woodward, *The Constitutional Lien on Chattels in Texas*, 28 Tex. L.Rev. 305 at 316 (citations omitted).

**42.** 7/15/03 Order at 6; *see also id.* at 8 (citing Enterprise's "sheer size" as a reason for disqualifying it as an artisan); *id.* at 11–13 (emphasizing that it is Enterprise as a company that is trying to obtain a lien, not its individual workers, who might qualify as artisans).

**43.** *Id.* at 8–9.

grounds.[44] *First*, Enterprise argues that the Bankruptcy Court erroneously found that a corporation or other limited liability entity is not entitled to a Constitutional Lien.[45] *Second*, Enterprise submits that the Bankruptcy Court incorrectly focused solely on "manual labor" in defining the term "artisan" for purposes of the Constitutional Lien.[46] Because Enterprise does not challenge the Bankruptcy Court's finding that Enterprise is not a "mechanic" or a "material man," I do not address these issues.[47]

### a. Corporations As Artisans

■ A corporation can qualify for a Constitutional Lien.[48] EGLI makes much of Enterprise's failure to cite "a single case in which a Texas court has recognized a business entity as an 'artisan' entitled to the constitutional artisan's lien."[49] But, as noted in the preceding section, there are very few cases in which an artisan's Constitutional Lien has been granted to *anyone*—whether a business entity or a natural person. Most Constitutional Lien cases involve material men.[50] A material

44. Enterprise also argues that the Bankruptcy Court erred by (1) failing to incorporate the definition of "artisan" employed in other states for the purposes of other liens; (2) stating that "to rule that Enterprise is either an artisan or a materialman would be to stretch their respective definitions," 7/15/03 Order at 9; and (3) not ruling on the other elements of the Constitutional Lien—namely whether Enterprise "made" "articles" through its fractionation of NGLs. These arguments warrant only brief discussion. *First*, the Bankruptcy Court's refusal to define "artisan" as one who "adds value by use of its skills," Enterprise App. Mem. at 11, is correct. Relying on Texas authority to define "artisan" is particularly appropriate in light of the uniqueness of the self-executing Constitutional Lien. *See supra* note 33 and accompanying text; *see also infra* note 54 (addressing Enterprise's argument for the alternative "artisan" definition). *Second*, a finding that Enterprise is not an artisan, mechanic, or material man obviates the need to determine whether Enterprise "made" "articles" for purposes of the Constitutional Lien.

45. Enterprise App. Mem. at 14–16 (citing 7/15/03 Order at 12, 3, 8). The 7/15/03 Order appears to suggest Enterprise is not entitled to the Constitutional Lien because it is a "company," not a natural person. *See* 7/15/03 Order at 12–13. *But see id.* at 9 (indicating that an "entity" could qualify for the lien). For the reasons set forth in Part III.A.1.b, insofar as the Bankruptcy Court's decision implies that a corporation may not obtain a Constitutional Lien, it is in error.

46. Enterprise App. Mem. at 14 (citing 7/15/03 Order at 8–9); Reply Brief of Appellant Enter-

prise at 3, 8. Enterprise's summary of the Bankruptcy Court's findings on this point is rather misleading. Judge Gonzalez did not explicitly "require" that a person perform "manual labor" to qualify for relief under article XVI, section 37. He did note that because the "use of tools and the performance of *manual labor* are not the driving forces of Enterprise's engineering process," Enterprise is not considered "skilled in a 'mechanical craft.' " 7/15/03 Order at 8 (emphasis added). But, his emphasis was not on "manual labor" as defined by Enterprise. *See infra* Part III.A.2.b.

47. Notably, Enterprise did not allege that it is a "mechanic" within the meaning of the Constitutional Lien before the Bankruptcy Court or on this appeal. *See* 7/15/03 Order at 6. Although Enterprise did contend that it was a material man before the Bankruptcy Court, *see* Enterprise Mem. ¶ 20, Enterprise did not raise the issue on appeal.

48. *See supra* Part III.A.1.b.

49. EGLI App. Mem. at 12.

50. Recognizing this lacuna in the case law, Enterprise reasons that the precedents are more likely to focus on interpretation of "material men" because:

As a practical matter, a mechanic or artisan will often not relinquish possession of personalty on which he has performed services until receipt of payment.... Materialmen by the very nature of their business relinquish possession of material to be incorporated into a building and have more often

man lien has been granted to corporations, as well as natural persons.[51]

There is no basis for withholding the artisan's Constitutional Lien from a party simply because it is a business entity, rather than a natural person. To the contrary, under certain circumstances denial of artisan status to a business entity would be inconsistent with both the plain meaning of the Constitutional Lien, which does not define artisan as a "natural person" and the purpose of the Constitutional Lien, which is to protect Texas laborers. Limiting eligibility for the lien to natural persons would leave those workers unprotected.[52] For instance, the *Ambrose* court found that plaintiff-builders were entitled to a lien as artisans or mechanics for the value of their labor performed in the construction of a pier. *Ambrose* involved two individuals working together, but had they been organized as a "business entity," should that label have deprived them of artisan's or mechanic's status? Narrowing the scope of the Constitutional Lien by precluding corporations from claiming "artisan" status while permitting them to be "material men" is unwarranted.[53]

### b. "Manual Labor" As a Requirement for Artisan Status

■ An "artisan" is "one skilled in some mechanical craft; one who is employed in an industrial or mechanic art or trade"; or "one trained for manual dexterity in some mechanic art or trade."[54] As

---

had to resort to the courts to protect their lien rights.
Enterprise App. Mem. at 11 n. 32.

**51.** *See supra* note 41 and accompanying text. EGLI argues that "the fact that a corporation may qualify for the constitutional *material-man's* lien on materials supplied does not establish that corporations can qualify for an artisan's lien." EGLI App. Mem. at 12 (emphasis added). Inasmuch as the material man cases do not definitely prove that Texas courts would award the artisan's Constitutional Lien to a corporation, EGLI is correct. But at the same time, those cases do not *preclude* the possibility.

**52.** EGLI argues that "[s]ection 37 provides artisans who are not paid with a remedy against their employers." EGLI App. Mem. at 13. But EGLI fails to provide any support for the proposition that the Constitutional Lien applies to such internal labor disputes. The artisan's lien applies in situations where an artisan contracts with a third party to make or repair an "article" or "building."

**53.** Corporations may also claim "mechanic" status, albeit by analogy to the statutory mechanic lien laws. *See Wilson v. Hinton*, 131 Tex. 593, 116 S.W.2d 365, 367 (1938) ("[I]t [is] the established law of this state that the lien contemplated by the Constitution and statute may be created in favor of one who actually furnishes labor and material . . . even though the same may be furnished through the agency of some one else.") (citations omitted); *Enlow v. Brown*, 357 S.W.2d 608, 609–10 (Tex.Civ.App.1962) ("Appellee was the contractor who furnished materials and labor which went into the construction of the house. The men who actually laid the tile were employees of appellee. They were paid wages by appellee. Compensation for labor performed in the installation of the tile was properly included in the debt secured by lien."); *see also Richard H. Sikes, Inc. v. L & N Consultants, Inc.*, 586 S.W.2d 950 (Tex.Civ. App.1979).

**54.** *Warner Mem'l Univ.*, 56 S.W.2d at 236–37.

Enterprise submits that the word "artisan" as understood in 1896 meant "one whose labor or skill increases the value of personal property placed in his possession." Enterprise App. Mem. at 12 (citing *Meyers v. Bratespiece*, 174 Pa. 119, 34 A. 551 (1896)). But the court in *Meyers* merely stated: "Whenever a workman or artisan, by his labor or skill, increases the value of personal property placed in his possession to be improved, he has a lien upon it for his proper charges until paid." 34 A. at 551 (quoting 13 Am. & Eng. Enc. Law 590, 591). Clearly, the court in *Meyers* was not attempting to define the word "artisan," but was simply explaining what relief is available to one already deemed an artisan.

noted in the preceding section, Texas courts have found sign painters, plasterers, and pier builders to be "artisans."[55] Additionally, the usual and ordinary meaning of "artisan" encompasses persons such as carpenters, plumbers, tailors, and mechanics.[56] What distinguishes these "artisans" from "rocket scientists" is the kind of skill that they employ.[57] Artisans employ skills requiring some degree of manual dexterity.

Enterprise argues that the 7/15/03 Order incorrectly superimposes a requirement of "manual labor" onto the Texas Constitution. As defined by Enterprise, the phrase "manual labor" means the use of "hands" or "hand tools" as opposed to the use of "machinery."[58] This definition of "manual labor," of course, is distinguishable from "manual dexterity," which refers to adroitness.[59] "Manual labor" is not a requirement for artisan status. Just as a skilled laborer using hand tools to create an article can be deemed an artisan, a laborer (e.g., a tailor or a machinist operating a lathe) using machines to accomplish a similar task can also be an artisan. But where the primary "inputs" to production of an object are raw materials and capital (machines) and the laborer serves only an ancillary (e.g., supervisory) purpose, there is little, if any, need for the laborer's skills or manual dexterity. In that case, to confer artisan status upon the producer would go beyond the ordinary meaning of the word "artisan."

Enterprise's failure to qualify as an artisan has nothing to do with the fact that NGL production involves machinery. Enterprise is not an artisan because "it is the technical facilities themselves ... that ultimately bring about the production of the NGLs."[60] The word "artisan," as generally understood, does not encompass a provider of fractionation services, such as Enterprise, whose laborers' primary function is to set the controls and parameters, and "monitor" what is essentially an automated, mechanized process.[61]

### c. Summary of Constitutional Lien Issues

To the extent that the Bankruptcy Court implied that a corporation cannot obtain a Constitutional Lien, it was in error. However, the Bankruptcy Court correctly held that Enterprise is not an artisan because the process of fractionation is defined not by the manual dexterity of Enterprise's skilled laborers, but by capital equipment and technical facility. Because Enterprise is not an artisan within the meaning of article XVI, section 37, it is not entitled to a self-executing lien on the sale proceeds from the NGLs.

### B. Attorneys' Fees

### 1. Legal Standard

■ Section 506(b) of the Bankruptcy Code states:

To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be

---

**55.** See *Warner Mem'l Univ.*, 56 S.W.2d at 237 (sign painters and plasterers); *Ambrose*, 356 S.W.2d at 217 (pier builders).

**56.** See, e.g., *Black's Law Dictionary* 113 (6th ed.1990); *Webster's Ninth New Collegiate Dictionary* 106.

**57.** See EGLI App. Mem. at 14.

**58.** See Enterprise App. Mem. at 18.

**59.** See *Webster's Ninth New Collegiate Dictionary* 348.

**60.** 7/15/03 Order at 9.

**61.** Tr. at 22, 30, 31 (statements of Terrance Hurlburt).

allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.[62]

To recover attorneys' fees under section 506(b), a creditor must establish: (1) that its claim is over-secured in excess of the fees requested; (2) that the fees are reasonable; and (3) that the agreement giving rise to the claim provides for attorneys' fees.[63] A party failing to meet any of these requirements is not entitled to recovery. For example, unless the underlying agreement provides for attorneys' fees, such fees are not recoverable pursuant to section 506(b).[64]

### 2. Analysis

■ Although Enterprise disputes the Bankruptcy Court's denial of reimbursement for "reasonable attorneys' fees" pursuant to section 506(b),[65] Enterprise failed to brief this issue.[66] I agree with the findings of the 7/15/03 Order, which are summarized as follows:

> Since fees, costs and charges are not allowable under § 506(b) in the absence of a contractual entitlement, and given that the Trucking and Storage Lien was not created, and that a valid Fractionation and Product Treatment Lien claim would not be created, pursuant to an agreement between the parties, post-pe-

tition attorneys' fees are unavailable to Enterprise under § 506(b).[67]

### IV. CONCLUSION

For the foregoing reasons, the decision of the Bankruptcy Court is affirmed. The Clerk of the Court is directed to close this motion and this case.

---

**62.** 11 U.S.C. § 506(b).

**63.** *See, e.g., In re Schriock Constr., Inc.,* 104 F.3d 200, 201 (8th Cir.1997).

**64.** *See United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) ("Recovery of postpetition interest is unqualified. Recovery of fees, costs, and charges, however, is allowed only if they are reasonable and provided for in the agreement under which the claim arose. Therefore, in the absence of an agreement, postpetition interest is the only added recovery available.").

**65.** 7/24/03 Notice of Appeal.

**66.** Enterprise did not brief this issue before the Bankruptcy Court either. *See* 7/15/03 Order at 13 ("The Court notes that Enterprise did not argue its rationale in asking for its attorneys' fees with any degree of specificity, so the Court looks toward the statute and the related case law exclusively to determine the merits of such claim.").

**67.** *Id.* at 14.